UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GOVERNMENT EMPLOYEES
INSURANCE  COMPANY, GEICO
GENERAL INSURANCE COMPANY, and
GEICO INDEMNITY COMPANY

        Plaintiffs,

    vs.

BIG CITY CHIROPRACTIC & SPORTS
INJURY, BRIAN ELIAS, D.C., MEGAN
BRATTON, D.C., KAREN DAVIS,
PROFESSIONAL SOLUTIONS INC., AND PS
FUNDING, LLC,

        Defendants.

Civil Action No.: 1:15-cv-13504

**COMPLAINT AND JURY DEMAND**

David O. Brink, BBO #547370
  *dbrink@smithbrink.com*
Douglas D. McInnis, BBO#672935
  *dmcinnis@smithbrink.com*
Lynn G. McCarthy, BBO #552150
  *lmccarthy@smithbrink.com*
Douglas R. Tillberg, BBO#661573
  *dtillberg@smithbrink.com*
SMITH & BRINK, P.C.
350 Granite Street, Suite 2303
Braintree, MA 02184
Phone 617-770-2214
Fax 617-774-1714

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   THE PARTIES.................................................................................................... 3

III.  JURISDICTION AND VENUE .......................................................................... 5

IV.   GEICO'S BUSINESS ......................................................................................... 5

      A.   Automobile Coverages Implicated. ..........................................................5

      B.   Impact of Defendants' Conduct on GEICO. ............................................7

V.    DEFENDANTS' REFERRAL SCHEME ........................................................... 9

      A.   Dr. Elias' Interstate Network. ..................................................................9

      B.   PS Funding Kickbacks and Money Laundering. ....................................12

      C.   Unlicensed "Professional" Legal Assistance. ........................................15

VI.   BIG CITY OVERUTILIZATION OF PRACTICE AND DECEIT ........................ 17

      A.   Hiring and Instruction of Dr. Bratton. ...................................................17

      B.   Unlawful and Fraudulent Billing for Services of Unskilled Staff. .....................................18

           1.   Fraudulent and Deceptive Failure to Supervise Supportive Services By
                Unqualified Staff. ........................................................................18

           2.   Unlawful Delegation of Physical Therapy to Unskilled Staff Members. ...........21

      C.   Fraudulent Recordkeeping. .....................................................................26

           1.   False Certification....................................................................... 26

           2.   Up-coding of Unskilled Exercise Assistance......................................27

VII.  ALLEGATIONS CONCERNING SPECIFIC INSURANCE CLAIMS ................... 32

      A.   Claimant: M.C.; GEICO Claim No.: 052776160101018;
           Date of Loss: December 7, 2014. ............................................................32

      B.   Claimant:  C.G.; GEICO Claim No.: 0502776160101018;
           Date of Loss: December 7, 2014. ............................................................34

      C.   Claimant:  F.J.; GEICO Claim No.: 0383928010101012;
           Date of Loss: November 15, 2014.......................................................... 35

D.  Claimant:  G.S.; GEICO Claim No.:  0503722320101042;
    Date of Loss:  February 4, 2015...........................................................................37

E.  Claimant:  A.W.; GEICO Claim No.:  0525131450101018;
    Date of Loss: March 14, 2015.............................................................................39

F.  Claimant:  D.S.; GEICO Claim No.:  040307051010112;
    Date of Loss: March 15, 2015.............................................................................40

G.  Claimant:  J.A.; GEICO Claim No.:  0427237950101033;
    Date of Loss:  April 14, 2015.............................................................................41

H.  Claimant:  L.A.; GEICO Claim No.:  0468312910101025;
    Date of Loss:  October 21, 2014. .......................................................................43

I.  Claimant:  A.J.M.; GEICO Claim No.:  0515706760101022;
    Date of Loss:  January 8, 2015...........................................................................44

J.  Claimant:  A.S.; GEICO Claim No.:  0491205440101047;
    Date of Loss:  December 12, 2014. .....................................................................46

K.  Claimant:  D.S.; GEICO Claim No.: 0503722320101059;
    Date of Loss:  February 13, 2015.......................................................................47

L.  Claimant:  S.A.; GEICO Claim No.:  0420212310101046;
    Date of Loss:  February 8, 2015.........................................................................49

M.  Claimant:  T.P.H.; GEICO Claim No.:  0497643830101025;
    Date of Loss:  March 16, 2015...........................................................................50

N.  Claimant:  B.S.; GEICO Claim No.:  0484070640101018;
    Date of Loss:  August 14, 2014. .........................................................................53

O.  Claimant:  N.F.; GEICO Claim No.:  0500514330101036;
    Date of Loss:  November 22, 2014. .....................................................................54

P.  Claimant:  S.R.; GEICO Claim No.:  052776160101018;
    Date of Loss:  December 7, 2014. .......................................................................55

VIII.   CAUSES OF ACTION ............................................................................. 57

COUNT I:  VIOLATIONS OF 18 U.S.C. § 1962(c) (BIG CITY ENTERPRISE)
    (Against Dr. Elias, Dr. Bratton, and Ms. Davis) ..................................................57

COUNT II:  VIOLATIONS OF 18 U.S.C. § 1962(d) (BIG CITY CONSPIRACY)
    (Against Dr. Elias, Dr. Bratton and Ms. Davis) ...................................................62

COUNT III:  VIOLATIONS OF 18 U.S.C. § 1962(c) (ASSOCIATION-IN-FACT
    ENTERPRISE) (Against All Defendants) ............................................................64

COUNT IV:  VIOLATIONS OF 18 U.S.C. § 1962(d) (ASSOCIATION-IN-FACT
    ENTERPRISE CONSPIRACY) (Against All Defendants)............................................67

COUNT V:  DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
    DECLARATORY JUDGMENT ACT (Against Big City, Dr. Elias, and Dr.
    Bratton) ................................................................................................................68

COUNT VI:  COMMON LAW FRAUD
    (Against Big City, Dr. Elias, and Dr. Bratton) ..................................................69

COUNT VII:  CIVIL CONSPIRACY (Against All Defendants) ..........................................70

COUNT VIII:  MONEY HAD AND RECEIVED (Against Big City) .................................71

COUNT IX:  VIOLATIONS OF MASSACHUSETTS GENERAL LAWS
    CHAPTER 93A (Against All Defendants) ........................................................72

COUNT X:  INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS
    BUSINESS RELATIONSHIPS (Against All Defendants) ...............................75

COUNT XI: INJUNCTION GEN. L. C. 221, § 44A (Against Big City, Dr.
    Elias, and Dr. Bratton).......................................................................................76

COUNT XII:  INJUNCTION MASS. GEN. L. C. 221, § 43 (Against Ms. Davis,
    PS Funding, and PSI) .........................................................................................77

IX.     DAMAGES ............................................................................................... 78

X.     JURY DEMAND ...................................................................................... 79

## COMPLAINT AND JURY DEMAND

NOW COME the plaintiffs, Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company (collectively, "GEICO") by their attorneys, Smith & Brink, P.C., and allege as follows:

### I.    INTRODUCTION

1.    Big City Chiropractic & Sports Injury, Inc. ("Big City") is the Massachusetts-based arm of an Interstate network of chiropractic clinics operated by defendant and Florida resident, Brian Elias, D.C. ("Dr. Elias").  Dr. Elias, directly and through affiliates, operates Big City and acts through its corrupt companion businesses, Professional Solutions, Inc. ("PSI"), and PS Funding, LLC ("PS Funding").

2.    Dr. Elias and co-conspirators Karen Davis ("Ms. Davis") and Megan Bratton, D.C. ("Dr. Bratton") execute a scheme to defraud GEICO, as well as other casualty insurers using an interlocking scheme consisting of the following elements:  *(i)* advertising of payment of kickbacks through PS Funding, PSI and Ms. Davis to patients for cooperating with unreasonable and unnecessary treatment at Big City, which are marketed as loans; *(ii)* overutilization of chiropractic practice through Big City and submission of inflated demands for insurance payments founded on false and deceptive bills and records concerning what predominately was gym exercise assisted by unskilled and unlicensed individuals; and *(iii)* unauthorized practice of law at PSI by Ms. Davis, who holds herself out as a paralegal unsupervised by any attorney, to persuade people who were in minor accidents to cooperate with the integrated conspiracy and unlawfully arranging for their representation by one or more attorneys who then prosecute claims based on Big City bills.

3.      Big City and Dr. Bratton routinely provide to Ms. Davis, PS Funding, and PSI, extraordinary access to Big City facilities in furtherance of the conspiracy, even though Ms. Davis is not a doctor and instead is a self-styled freelance paralegal.

4.      The core of the scheme is a recipe devised by Dr. Elias to profit by extensively utilizing unskilled services at Big City, and billing those services as if they were performed by a skilled, licensed practitioner.  Dr. Elias directed Dr. Bratton, a new chiropractor, to uniformly prescribe an open-ended regimen emphasizing physical therapy that Dr. Bratton unlawfully delegates to unskilled and unlicensed individuals.

5.      Dr. Elias then causes Dr. Bratton's services to be falsely billed to insurers like GEICO under no-fault medical payments coverage such as Personal Injury Protection ("PIP"), as "therapeutic exercise" assisted one-on-one by qualified medical personnel at between $280 and $380 per hour.

6.      GEICO seeks a judgment from this Court entitling it to recover money damages and declaratory and injunctive relief in connection with defendants' unlawful conduct.

7.       GEICO's damages consist of sums unfairly and deceptively extracted by Big City as a result of the fraud and unfair business practices, as well as the costs of handling and investigation.  GEICO has paid at least **$109,767** in connection with **$517,280** in bills submitted by Big City, Dr. Elias, and Dr. Bratton.  Additional bills were presented to GEICO for several months in 2015 at an annualized rate of more than **$600,000 per year**, necessitating ongoing costs of investigation and handling.

8.      Furthermore, GEICO seeks exemplary damages in the form of treble damages pursuant to the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962

("RICO Act"), and Massachusetts law concerning regulation of business practices for consumers protection, Massachusetts General Laws chapter 93A, section 11.

9.        In addition, GEICO seeks injunctive relief including the termination of the unlawful practices and an order compelling Big City, Dr. Elias, and Dr. Bratton to transmit a disclaimer to all patients to the effect that defendants have engaged in unlawful practices that resulted in unnecessary and unreasonable bills for chiropractic and therapeutic services, such disclaimer being necessary to curtail the dispute between GEICO and unknown third parties who may foreseeably in the future present claims based for bodily injury to GEICO and its insureds based on Big City's fraudulent and deceptive bills and unlawful other conduct.   GEICO estimates it is presently being subjected to liability claims in this nature on behalf of insureds that based on projected initial demands as alleged below, total **$465,000**.

10.        All of the acts and omissions of the defendants described throughout this Complaint were undertaken intentionally.

## II.        <u>THE PARTIES</u>

11.        Government Employees Insurance Company has a principal place of business at 5260 Western Avenue, Chevy Chase, Montgomery County, Maryland.

12.        Government Employees Insurance Company is the parent of subsidiary business entities that underwrite insurance policies in the Commonwealth of Massachusetts, including GEICO General Insurance Company, and GEICO Indemnity Company. Collectively, Government Employees Insurance Company and these entities are referred to herein as "GEICO."   GEICO has offices, among other places, in Fredericksburg, Virginia and Getzville, New York.

13.     The GEICO companies share common resources and personnel for purposes of receiving communications from vendors and claimants, and for investigating and adjusting claims.

14.     Defendant Brian Elias, D.C. ("Dr. Elias") is a natural person residing at 4779 Collins Avenue, #2307, Miami Beach, Florida.

15.     Defendant Big City Chiropractic & Sports Injury, Inc. ("Big City") was organized on February 8, 2014, under the laws of the Commonwealth of Massachusetts, having a place of business located at 1855 Dorchester Avenue in the Dorchester neighborhood of Boston, Massachusetts.

16.     Defendant Megan Bratton, D.C. ("Dr. Bratton") is a natural person residing at 75 Boylston Road, Berlin, Massachusetts.  Since approximately May 2014, Dr. Bratton has been the sole chiropractor in residence at Big City.

17.     Professional Solutions Inc. d/b/a Professional Solutions Multi Service Center ("PSI") was organized under the laws of the Commonwealth of Massachusetts on May 16, 2014. PSI has a business location at 1773 Dorchester Avenue in the Dorchester neighborhood of Boston, Massachusetts.

18.     PS Funding, LLC ("PS Funding") is a company that was organized under the laws of the Commonwealth of Massachusetts on May 1, 2014.  PS Funding is located at 1773 Dorchester Avenue in the Dorchester neighborhood of Boston, Massachusetts, at the same location as PSI.

19.     Defendant Karen Davis ("Ms. Davis") is a natural person residing at 79 Kenwood Street, #1, Dorchester Center, MA 02124. Ms. Davis is not licensed as a lawyer in any jurisdiction.

20.     Ms. Davis conducts her unfair business practices through PSI and PS Funding.

### III.     JURISDICTION AND VENUE

21.     The amount in controversy is in excess of $75,000, exclusive of interest, costs and attorneys' fees.

22.     The Court has jurisdiction pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1332.

23.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

24.     A central nucleus of wrongful acts were carried out in and about Boston, Massachusetts.  Venue is appropriate in the Boston Division of the United States District of Court for the District of Massachusetts.

### IV.     GEICO'S BUSINESS

#### A.     Automobile Coverages Implicated.

25.     In the last year for which statistics are available, GEICO had more than 190,000 automobile policies in force in favor of consumers in the Commonwealth of Massachusetts, covering more than 270,000 automobiles.  GEICO insures millions of vehicles nationwide.

26.     A true copy of the form used by GEICO for consumer policies issued in Massachusetts from 2013 to the present is filed herewith as **Exhibit 1**.

27.     Pursuant to Massachusetts General Laws chapter 90, sections 34A and 34M, Part 2 of the form of personal auto insurance policy issued by GEICO in the Commonwealth of Massachusetts provides for compulsory Personal Injury Protection ("PIP") coverage, which in summary covers reasonable expenses for necessary medical, surgical, x-ray and dental services

causally connected to an automobile accident, within the limits of $2,000 to $8,000 depending on the specific circumstances of the claim.

28.        GEICO also offers for sale pursuant to Part 6 of its Massachusetts Automobile Insurance Policy, optional Medical Payments coverage for, in summary, reasonable expenses for necessary medical services to occupants of the insured's vehicle and household members, incurred as a result of an accident.

29.        In 2014, GEICO had in force more than 30,000 policies in Massachusetts providing Medical Payments coverage with median limits of liability of $5,000.

30.        GEICO further offers for sale compulsory and optional coverage pursuant to Parts 1 and 5 of its Massachusetts Automobile Insurance Policy for Bodily Injury to Others who are injured in automobile accidents, for which, in summary, a named insured is legally responsible.  Limits of liability under the compulsory coverage provided by Part 1 are $20,000 per person and $40,000 per accident.  Limits of liability under the optional coverage pursuant to Part 5 can be as high as one million dollars.

31.        All GEICO policies issued in Massachusetts have coverage under Part 1 for compulsory Bodily Injury to Others.

32.        In 2014, GEICO had in force more than 190,000 Massachusetts policies of auto insurance providing optional Part 5 coverage for Bodily Injury to Others, with median limits of liability, in summary, of $50,000 per claimant and $100,000 per accident.

33.        Tort demands under Parts 1 and 5 Bodily Injury coverages may implicate medical bills in at least three ways.  First, the tort claimant may demand payment of medical bills not paid directly by any insurer under another insurance policy or coverage.  Second, the tort claimant may rely on the issuance of at least $2,000 in medical bills to overcome a limitation on

the claimant's ability to assert a tort claim for pain and suffering set forth in Massachusetts General Laws chapter 231, section 6D, in the absence of which the tort claimant would be prohibited from making a tort demand.  Third, claimants rely on health care bills as a proxy for demonstrating the detrimental impact of the motor vehicle accident on their person, with greater claims for detrimental impact in the case of greater medical bills.

34.     Bills for medical services are in general considered by participants in the automobile tort resolution industry to be a significant factor for determining the amount to demand in settlement for claims of pain and suffering under Parts 1 and 5 for coverage of Bodily Injury to Others.

35.     GEICO issues other automobile insurance coverages that may foreseeably result in insurance claims based in whole or part on medical bills.

**B.     Impact of Defendants' Conduct on GEICO.**

36.     Numerous patients who pursued treatment at Big City sought to have those services paid directly by GEICO under policies of automobile insurance.  Specifically, payment was sought from GEICO under the "Personal Injury Protection" ("PIP") coverages of the Massachusetts Automobile Insurance Policy.

37.     Big City has demanded payment directly from GEICO for health care services under PIP coverages (Part 2).

38.     GEICO has been required to investigate demands for payment sent to it directly by Big City.  GEICO paid at least **$62,992** in connection with its investigation and handling of the invoices submitted by Big City (exclusive of payment to Big City).  (*See* **Exhibit 2C**, GEICO's Damages Chart at pp. 3-4, incorporated herein in its entirety).

39.      Nonparty tort claimants have issued demands to GEICO under Bodily Injury to Others coverages (Parts 1 and 5), which implicate bills issued by Big City either to GEICO or to other persons or insurers.

40.      GEICO justifiably and detrimentally relied on false and misleading documentation provided by Big City, Dr. Elias, and Dr. Bratton, causing it to pay unwarranted sums under PIP coverages, and causing it to incur unwarranted costs in investigating insurance claims.

41.      For several months in 2014, GEICO satisfied in whole or part, demands sent to it by Big City.  GEICO paid at least **$46,775** in satisfaction of invoices submitted by Big City, Dr. Elias, and Dr. Bratton (*See* **Exhibit 2B**, GEICO's Damages Chart at pp. 1-4, incorporated herein in its entirety).

42.      After investigation, GEICO has rejected numerous other direct demands for payment sent to it by Big City, totaling more than **$388,000**.

43.      GEICO continues to conduct an insurance investigation with respect to more than **$82,000** in bills.

44.      Big City has not waived its claims and demands, which present a real and actual dispute.

45.      Additional bills were being presented to GEICO for several months in 2015 at an annualized rate of more than **$600,000 per year**.

46.      GEICO has received liability insurance claims from or concerning third persons for payment of amounts under Parts 1 and 5 coverages for Bodily Injury to Others, which demands were based on alleged injuries that purportedly were treated at Big City.

47.     Nonparty tort claimants have relied, and foreseeably will rely in the future, on Big City bills to increase or justify the amounts of demands on GEICO insureds, which then are addressed to GEICO under Bodily Injury to Others coverages (Parts 1 and 5).

48.     The initial tort demands against GEICO, past or pending, known to be founded in whole or part on claims by individuals who received purported services from Big City since it opened in 2014, have totaled not less than **$195,000** with respect to eight total claimants.  Three of the tort claims are pending at this time, with initial tort demands totaling more than **$150,000**.

49.     In addition, the current, pending tort demands of thirteen additional persons presently against GEICO, founded in whole or part on purported services from Big City, are of unknown magnitude.  If those unknown demands follow the same pattern set forth above as the known tort demands, they would comprise **$315,000** in additional initial tort demands against GEICO founded in whole or part on purported services from Big City.

## V.     DEFENDANTS' REFERRAL SCHEME

### A.     Dr. Elias' Interstate Network.

50.     Dr. Elias owns and operates a network of health care facilities in several states having a significant number of drivers carrying no-fault insurance for payment of medical bills caused by an auto accident, similar to the Massachusetts PIP coverage.  Such states include Florida, Kentucky, and Pennsylvania.

51.     Dr. Elias resides in Miami Beach, Florida.

52.     Dr. Elias' clinics outside Massachusetts provide goods and services to individuals who report having been involved in an auto accident.

53.     In Louisville, Kentucky, Dr. Elias operates Kentucky Chiropractic Corporation ("Kentucky Chiropractic").  Dr. Elias organized Kentucky Chiropractic in 2012,

also with his affiliate, a non-party who will be referenced for purposes of identification in this document by the initials "K.D."

54.     Bills and reports for Big City are created or processed at the facilities of Kentucky Chiropractic.

55.     In Florida, Dr. Elias operates the eponymous Brian Elias DCM, LLC ("Elias DCM"), which has an office in Bay Harbor Island, Florida, and a clinic in Miami Lakes, Florida. Dr. Elias organized Elias DCM in 2008, also with his affiliate K.D.

56.     Dr. Elias organized Big City in 2014, the same year he became licensed in Massachusetts to practice chiropractic.

57.     Dr. Elias and the staff of Elias DCM enter the records and billing invoices of Big City into the U.S. Mail, for delivery to a GEICO facility.

58.     The records and bills from Big City are submitted to GEICO in the U.S. Mail in envelopes marked as from Dr. Elias (personally) at Elias DCM in Florida, as set forth in greater detail in **Exhibit 25**.

59.     In Philadelphia, Pennsylvania, Dr. Elias operates Pennsylvania Chiropractic Services Group ("Pennsylvania Chiropractic").  Dr. Elias founded Pennsylvania Chiropractic with his affiliate K.D.

60.     Bills from Big City request remittance of payment to Big City's billing office in Philadelphia, Pennsylvania, at the same location occupied by Pennsylvania Chiropractic.

61.     Bills issued by Big City to GEICO are addressed to GEICO's offices in another state, Fredericksburg, Virginia.

62.     To the extent GEICO has paid billing invoices issued by Big City, GEICO issued payments from its offices in Getzville, New York, by U.S. mail sent to Big City's billing office at the facility of Pennsylvania Chiropractic.

63.     The Interstate relationships of the different facilities are depicted in *Figure 1*, below:



*Figure 1*

64.     Dr. Elias serves as chiropractor of record of Big City, as set forth in 233 Code of Massachusetts Regulations, 5.03, as well as president, treasurer, secretary, sole director, and registered agent.

65.     Dr. Elias has authority and responsibility for the hiring, managing, directing, supervising, and terminating of Big City employees, including chiropractors, and other clinical and administrative staff members.

**B.      PS Funding Kickbacks and Money Laundering.**

66.      Ms. Davis is the sole resident principal of PS Funding.

67.      Ms. Davis organized PS Funding with a non-party K.D., the above-noted affiliate of the Interstate network of clinics operated by Dr. Elias.

68.      On information and belief, Dr. Elias was aware of and condoned the formation of PS Funding, and the subsequent activities of Ms. Davis on its behalf.

69.      On information and belief, PS Funding receives funding from Dr. Elias' Interstate network.

70.      According to corporate records filed with the Massachusetts Secretary of the Commonwealth, Ms. Davis is the sole manager of PS Funding (a limited liability company).

71.      The non-party affiliate of Dr. Elias, K.D., is registered with the Secretary of Corporations as a signatory for PS Funding.

72.      According to records filed with the Secretary of the Commonwealth, PS Funding is in the business of "medical loan funding."

73.      Ms. Davis is not a medical doctor or a chiropractor and, on information and belief, she has no skill or qualification in any healing art allowing her to legitimately evaluate the physical conditions of patients, or to make recommendations for treatment.

74.      In 2014 and 2015, Ms. Davis advertised the office of PS Funding and PSI with a neon sign announcing the availability of "CASH" to "INJURED" persons, as set forth in *Figure 2*, below:

*Figure 2*



75.     On information and belief, Ms. Davis and PS Funding intentionally offer to pay "cash" to individuals to secure the cooperation of these individuals with unnecessary and unreasonable services billed by Big City for the purpose of defrauding insurers.

76.     The telephone number in *Figure 2*, above, 617-501-4901 is associated with PSI and Ms. Davis, as set forth in *Figure 3*, below:

*Figure 3*



77.     As set forth in *Figure 3*, PSI and Ms. Davis publish a website at the address www.professolutions.info.

78.     The website for Ms. Davis and PSI describes the "field of work" as "focused around Automobile Accidents, Bed Bugs issues, Dog bites, Slip and Fall, Divorce Matters and Necessity Funding on accidents."

79.     On information and belief, the PS Funding entity formed with the affiliate of Dr. Elias, is used by Ms. Davis for "funding on accidents" concerning Big City patients, as advertised by Ms. Davis and PSI.

80.     All the defendants cooperate with PS Funding and Ms. Davis by, among other things, granting access to Ms. Davis to patient examinations for the purpose of facilitating her portion of the scheme.

81.     Ms. Davis' access to the facility put her in a position to know the lack of skill, qualification, and licensure of Big City clinical staff, as well as their role in independently providing "therapy" to patients.

82.     On information and belief, Ms. Davis did know that Big City was improperly billing insurers like GEICO for therapy provided by unqualified individuals, such as individuals hired by Big City as drivers for patients.

83.     Big City never declined to treat a person referred to the clinic by Ms. Davis.

84.     Ms. Davis regularly refers patients to Big City.

85.     Ms. Davis intended that people she referred to Big City would be prescribed courses of services of uniform frequency and length, which is what Ms. Davis knew Big City did.

86.     Ms. Davis and PS Funding advertise the payments to patients of Big City as "loans," and structure them from a source other than Big City, to intentionally foster a false sense of regularity.

87.     PS Funding is, on information and belief, an instrumentality of Big City, and its acts of paying patients violation of Massachusetts General Laws chapter 266, section 111C, in that it is procuring patients by in-person contact for the purpose of fraudulently obtaining PIP benefits from GEICO.

88.     Defendants joined together to obtain unwarranted payments via the Personal Injury Protection (hereinafter "PIP") coverage under policies of automobile insurance issued by GEICO, on a continuous and repetitive basis by: (1) advertising rewards for "runners" within the meaning of Massachusetts General Laws chapter 266, section 111C, in cash or in kind, for procuring patients to treat at a defendant clinic; (2) rewarding patients, in cash or in kind, for treating with defendants; (3) generating fraudulent medical records and invoices for treatment that was not actively rendered and/or not rendered as represented; and, (4) generating fraudulent health care records and billing invoices.

**C.      Unlicensed "Professional" Legal Assistance.**

89.     PS Funding operates out of the same address as PSI.

90.     The resident principal of PSI is Ms. Davis.

91.     Ms. Davis advertises herself as a professional paralegal who operates PSI, in conjunction with PS Funding, as a "legal assisting" office that can assist with, among other things, auto accidents, criminal, and divorce matters.

92.     PSI's business, as set forth in its articles of incorporation, is: "[p]aralegal services and community legal assistance."

93.     Ms. Davis advertises herself as having authority or power on behalf of injured persons to procure settlements for them of their alleged damages and claims.

94.     Ms. Davis holds herself out as someone who advises clients in signing important documents.

95.      Ms. Davis solicits for herself and others, the right to represent individuals in civil and criminal judicial proceedings.

96.      Ms. Davis solicits people involved in automobile incidents for herself or another, seeking management or control of any resulting claims, and the authority to adjust claims any seek recovery in connection with the same.

97.      Ms. Davis intentionally makes in-person or telephone contact with individuals who subsequently make claims on insurance coverage issued by GEICO, for the purpose of evaluating potential insurance claims following motor vehicle accidents.

98.      The GEICO claimants who have admitted to receiving assistance from Ms. Davis, in connection with purported services from Big City and Dr. Bratton, are summarized in **Exhibit 3**.

99.      Ms. Davis intentionally has sought to induce people to initiate tort claims against GEICO, and on information and belief, other insurers, in the aftermath of predominantly low-speed automobile accidents.

100.     To this end, Ms. Davis advises individuals who have been in an auto accident to treat at Big City.

101.     Individuals who Ms. Davis referred to Big City would not have gone to the facility, and maybe not even to a chiropractor at all, if Ms. Davis had not referred them to the facility.

102.     Ms. Davis contacts insurers for individuals after auto accidents to initiate or advance insurance claims.

103.     Ms. Davis is the president, treasurer, secretary, and sole director of PSI and PS Funding.

104.     In its articles of incorporation, PSI's purpose is limited as follows: "The corporation will not be rendering any legal services which will constitute the practice of law."

105.     As sole corporate officer, Ms. Davis intentionally operates PSI unlawfully in disregard for its corporate purpose.

106.     After setting clients on the path to incurring fraudulent claims for health care services from Big City, Ms. Davis further intentionally refers individuals to one or more attorneys to pursue insurance and tort claim(s).

107.     Ms. Davis engages in this conduct knowingly and intentionally, as she previously was under the supervision of a Massachusetts attorney before opening PSI with Dr. Elias' affiliate K.D.

108.     Ms. Davis intentionally has caused multiple GEICO insureds to cooperate with the defendants' unlawful scheme, resulting in demands by Big City and others for payments of bills for services that are unreasonable and unnecessary.

## VI.     BIG CITY OVERUTILIZATION OF PRACTICE AND DECEIT

### A.     Hiring and Instruction of Dr. Bratton.

109.     Dr. Bratton became licensed for the first time as a chiropractor on June 9, 2014, approximately two months after she was hired by Dr. Elias and intentionally began unlawfully to perform the duties of a chiropractor at Big City without such license as having issued.

110.     Dr. Bratton received instruction at Pennsylvania Chiropractic and at Big City from Dr. Elias and another staff chiropractor with respect to the treatment to be rendered at Big City and the process to be used for health care records and billing invoices.

111.     Dr. Elias instructed Dr. Bratton to delegate treatment of patients to staff members, who are not licensed or skilled health care providers.

112.     Dr. Elias instructed Dr. Bratton to delegate treatment of patients to staff members, who are not licensed by any board or authority in the practice of any healing art.

113.     Dr. Elias trained Dr. Bratton to prescribe extensive exercise to patients, purportedly as a supportive therapy.

114.     Dr. Elias trained Dr. Bratton to direct patients to perform exercise at Big City under the supervision of the staff members, who are not licensed or skilled health care providers.

115.     Prior to becoming employed at Big City, Dr. Bratton had never received clinical training with respect to treating a patient with therapeutic exercise.

116.     Dr. Elias intentionally trained Dr. Bratton to defer to the billing staff for the Interstate network of chiropractic facilities concerning the contents of bills for Big City's services.

117.     Dr. Bratton has no authority to hire or fire staff at Big City and does not meet with them prior to hire (**Exhibit 4** at p. 48), this authority being reposed in the Big City office manager, nonparty Mira Desai ("Ms. Desai").

118.     Since mid-2014, Dr. Bratton has been the sole chiropractor in residence at Big City in Boston, Massachusetts.  (*See id.* at pp. 26 & 48).

B.     **Unlawful and Fraudulent Billing for Services of Unskilled Staff.**

1.     *Fraudulent and Deceptive Failure to Supervise Supportive Services By Unqualified Staff.*

119.     Big City's demands to insurers for payment of health care bills predominantly consists of demands for payment for services purportedly rendered by staff members.

120.     Big City's staff members are interviewed and hired by its office manager, Ms. Desai.

121.     Dr. Bratton uniformly prescribes services that are then rendered by unskilled staff members.

122.     Dr. Bratton intentionally prescribed a uniform length and frequency of treatment to GEICO claimants.

123.     Big City is open seven hours per day, five days per week.

124.     Dr. Bratton claims to render services to between forty and fifty patients per day, which permits her to spend slightly more than nine minutes per patient on average.  (*Id.* at p. 29).

125.     Dr. Bratton admits that in most encounters she spends only five to ten minutes with each patient, during which time she performs chiropractic adjustment(s) only.  (*Id.* at p. 53).

126.     Big City intentionally demands payment from GEICO for in excess of an hour of services in connection with most daily visits by patients, and approximately ninety-percent of time that is subject to billing is based on services purportedly rendered by staff.  (*Id.* at p. 54).

127.     According to the Massachusetts Chiropractic Standards of Practice and Professional Conduct, a chiropractor may prescribe "rehabilitative exercise therapy" in "support[ ]" of the primary Chiropractic procedure, meaning adjustment, *see* Massachusetts General Laws chapter 112, sections 89, 94, and 97, and 233 Code of Massachusetts Regulations, section 4.02.

128.     As much as two-thirds of the amounts billed by Big City and Dr. Bratton intentionally concern "supportive" modalities, and not primary chiropractic manipulation.

129.     It indisputably is an unprofessional practice for a chiropractor to allow unlicensed staff to perform any therapeutic modality if the chiropractor does not first evaluate the patient on the same visit.   This is the position set forth by the Board of Registration of Chiropractors in the *Policy Guideline on the Performance of Chiropractic Supportive Procedures and Therapies by Unlicensed Assistants*, No. 09-002.

130.     Dr. Bratton intentionally and falsely represented to GEICO under oath that she faithfully adheres to the directions set forth in Policy Guideline No. 09-002.  (*Id.* at p. 89).

131.     In fact, Dr. Bratton intentionally allows staff members without any professional licensure and without adequate training and qualification, to render "supportive" services to patients without first evaluating the patient on the same visit.

132.     Big City intentionally and falsely asserts in bills that Dr. Bratton was the provider with respect to "supportive" modalities independently performed by staff members who are unlicensed and unqualified to perform the services.

133.     Dr. Bratton allows Big City to bill for the services of staff members as if the services were performed by Dr. Bratton, personally.

134.     The GEICO claimants for whom GEICO was billed for unsupervised services from unlicensed and unqualified persons, are summarized in **Exhibit 5**.

135.     Dr. Bratton and Ms. Desai intentionally instructed patients to falsely inform GEICO that the supportive therapies were preceded by an evaluation conducted the same day.

136.     Dr. Bratton intentionally fails to adequately supervise the rendering of supportive therapies in violation of Massachusetts Chiropractic regulation 233 Code of Massachusetts Regulation, section 4.03(2).

137.     Dr. Bratton intentionally fails to supervise the rendering of electrical muscle stimulation procedures by staff, in that she allows the staff to decide where on the patient's body to apply the stimulation based on the staff's independent assessments of what part of the patient's body is generating the most pain.  (**Exhibit 4** at p. 55).

138.     Relying on unlicensed staff to independently determine how a procedure will be rendered without the intervention of a chiropractor is an unprofessional practice.

139.     By intentionally delegating her responsibility as a treating chiropractor to assess her patients before treatment is rendered by staff, and then by allowing Big City to issue bills in her name certifying services as having been rendered by her, Dr. Bratton engaged in an unfair and deceptive act and practice.

140.     By intentionally delegating her responsibility to decide where to apply electric stimulation services to patients, Dr. Bratton is in violation of applicable regulations concerning the practice of chiropractic, 233 Code of Massachusetts Regulations, secition 4.03(2), which is directed to the protection of health and safety.

### 2.     *Unlawful Delegation of Physical Therapy to Unskilled Staff Members.*

141.     Dr. Bratton universally prescribes physical therapy to patients, intentionally.

142.     Prior to working at Big City, Dr. Bratton had no clinical experience in providing physical therapy to patients.

143.     Dr. Bratton intentionally and uniformly fails to communicate with patients herself on a one-on-one basis while patients are exercising, even though the exercise purportedly is in response to a plan of care devised by Dr. Bratton.

144.     Dr. Bratton intentionally allows unskilled individuals, meaning individuals who are not licensed or trained as medical doctors, chiropractors, physical therapists, physical

therapy assistants, or providers in any other healing art, to supervise exercise "therapy" of patients at Big City.

145.     The staff members at Big City generally have no formal medical education prior to being hired to work at Big City.

146.     Physical therapists and their assistants are separately licensed by the Board of Registration in Allied Health Professionals.

147.     Under the Massachusetts General Laws, to become licensed, a physical therapy assistant must graduate from a three or four year secondary school, from an accredited education program leading to professional qualification as a physical therapist assistant approved by the Board of Registration in Allied Health Professionals, and demonstrate to the board knowledge of the basic and clinical sciences as they relate to physical therapy and other subjects as the board may deem useful to determine the applicant's fitness, as set forth in Massachusetts General Laws chapter 112, section 23J.

148.     Big City intentionally does not employ skilled physical therapists or physical therapy assistants.

149.     Dr. Bratton is a chiropractor and she is not a licensed physical therapist.

150.     According to the Massachusetts Chiropractic Standards of Practice and Professional Conduct, a licensed chiropractor "shall not delegate any clinical function for which licensure, registration or certification is required under any other applicable provision of state law or regulations to any person who does not possess the appropriate license, registration or certification required by said law or regulation."  (*See* 233 CMR 4.03(2)).

151.     By way of example, Gregory Vick ("Vick") stated under oath that he was hired to work for Big City by Ms. Desai with no medical training.  (**Exhibit 6** at pp. 9 & 43).

152.     Mr. Vick's sole responsibility, when hired, was to transport by motor vehicle, twelve to thirteen Big City patients, daily to and from their appointments.  (*See id*. at 24 – 25).

153.     Mr. Vick worked at Big City from June 2014 until January of 2015.  (*Id.*).

154.     Mr. Vick is not a qualified therapist.  (*Id.* at 147).

155.     Mr. Vick is not a qualified healthcare professional. (*Id.*).

156.     Despite Mr. Vick's lack of qualifications and licensure, shortly after being hired at Big City, he was intentionally instructed by Ms. Desai on behalf of Big City to treat patients, including GEICO patients, in the "physical therapy room" when he had no one to drive. (*Id.* at 47 – 48, 141).

157.     Specifically, Mr. Vick was instructed by Ms. Desai to oversee the patients' "physical therapy," by insuring that each patient he was working with was "properly" doing their exercises.  (*Id*. at 49).

158.     Although Mr. Vick represented that he received training over the course of a few days (from Dr. Bratton and Ms. Desai), he admitted that he would forget how to use some of the exercise machines.  (*Id.* at 59 – 60). In these instances, Mr. Vick would direct the patient purportedly in his "care" to stop exercising while he would seek out the assistance of another staff member to get a refresher.  (*Id.* at 60 – 61).

159.     In September 23, 2014, Mr. Vick, was purportedly involved in a motor vehicle accident wherein he sustained injuries, and subsequently presented to Big City for treatment.

160.     Mr. Vick continued to work as a driver and faux "therapist" during the time he purportedly received therapeutic exercise treatment.

161.     Mr. Vick confirmed that staff members were routinely instructed to render "supportive" services to him before Dr. Bratton evaluated him on the same visit.

162.     Big City falsely asserted in bills that Dr. Bratton was the provider with respect to "supportive" modalities that were independently performed on Mr. Vick by staff members that are unlicensed and unqualified to perform the services.

163.     Big City intentionally deceived GEICO and other insurers by holding out its staff, like Mr. Vick, as being licensed, trained and qualified to heal patients.

164.     In fact, the staff members employed by Big City are not qualified to assist patients with therapy.

165.     Dr. Bratton intentionally deceived GEICO by stating under oath that the training of her unskilled and unlicensed staff members consisted of a "couple" of hours, *i.e.*, two hours, of training on gym equipment, and an hour of subsequent follow up.  (**Exhibit 4** at pp. 52 – 53).

166.     On behalf of Big City, Ms. Desai also hired employee, Canei Cazeau ("Cazeau"), exclusively to be a driver for Big City patients.

167.     Mr. Cazeau had no medical credentials or training when he was hired by Big City.

168.     Shortly after Mr. Cazeau accepted the position, Ms. Desai intentionally instructed Mr. Cazeau to provide therapeutic exercises to Big City patients whenever he was not driving patients.

169.     Mr. Cazaeu's training lasted between twenty minutes and an hour, in total.

170.     The modest training received by the staff members at Big City intentionally is insufficient to qualify the workers to assist patients in connection with therapy.

171.     Big City's staff members are not qualified healthcare professionals.

172.     Big City's staff members are not qualified therapists.

173.      While a few of Big City's staff members represent that they are personal gym trainers, they are not qualified therapists.

174.      In fact, the fitness trainer program that a few of the staff members at Big City have taken, is done online.  It is open to anyone who can pay the fee.  There is no hands-on training at all.  There is no personal contact or interaction with patients.  The applicant need not personally demonstrate to any instructor what he or she has learned.  The applicant is sent the materials online and by mail.  The applicant studies at his or her own pace, however long that might take.  The applicant reads through the main course textbook and then takes a quiz at the end of each unit to practice what has been learned.  When the applicant does poorly on the quiz, he or she can take it over as many times as he or she wishes.  Whenever the applicant is stuck on a quiz question, he or she can contact the program's support staff at a toll free number or on line for the answer.  At whatever point that the applicant feels comfortable, he or she can access the final exam. That exam is untimed, open book and does not need to be completed in one sitting.

175.      The fitness trainer program taken by a few Big City staff members is not designed to qualify an applicant as a trained physical therapist, therapist assistant, or a therapist of any kind.  In short, the program is geared to teach the applicant how to help others live a fit and healthy lifestyle.

176.      The market rate for services of personal trainers at gyms in the geographical area where Big City is located, are substantially lower than the rate charged by Big City.

177.      The rates charged by Big City for exercise assisted by unskilled drivers, staff, and personal gym trainers were intentionally deceptive, unfair, unreasonable, and calculated in a manner to bolster Big City's claim that the individuals really were qualified "therapists."

178.     Unskilled or personal gym trainer services are non-medical interventions that are outside the scope of automobile insurance coverage for medical care, and they does not count toward satisfaction of the limitation of actions for a cause of action for pain and suffering set forth in Massachusetts General Laws chapter 231, section 6D.

179.     GEICO would not pay for services of a personal trainer under the automobile insurance coverages.

C.     **Fraudulent Recordkeeping.**

180.     Big City submits bills and records to insurers like GEICO using the United States mail and Interstate wires.

181.     Big City intentionally and routinely submits false statements to GEICO in support of demands for payment, to deceive GEICO for the purpose of extracting payment of unreasonable insurance claims.

182.     Big City intentionally and uniformly submits false statements to GEICO in connection with demands for payment under policies of insurance.

183.     Big City bills insurers like GEICO directly using a recent version of the Health Insurance Claim Form approved by the National Uniform Claim Committee.

*1.     False Certification.*

184.     Big City intentionally and uniformly represents to GEICO that Dr. Bratton has certified the records and bills sent to GEICO.  The pre-printed form states with respect to the person whose name is inserted in the lower left corner, "I certify the statements on the reverse are made part of this bill. . . ."

185.     The billing form used by Big City contains a blank line for "signature of physician or supplier" onto which employees at other facilities in Dr. Elias' Interstate network uniformly insert Dr. Bratton's name with the handwritten notation "S.O.F."

186.     On information and belief, the notation "S.O.F." means "signature on file."

187.     Likewise, records were submitted to GEICO with similar notations indicating that the records were certified by Dr. Bratton.

188.     Dr. Bratton intentionally omits to review Big City's billing invoices in any way before they are submitted to GEICO.

189.     Dr. Bratton intentionally omits to review the final versions of Big City's electronic notes and records before they are submitted to GEICO.

190.     Dr. Elias intentionally trained Dr. Bratton to rely entirely on Big City staff to issue bills and records to insurers.

191.     The notations on the records and bills intentionally, unfairly, and deceptively indicate that Dr. Bratton certified the bills, descriptions of services, and charges issued to GEICO.

192.     GEICO paid some charges in reliance on the statements contained in the records and bills concerning certification by Dr. Bratton.

193.     GEICO relied to its detriment on the representations on the bills to the effect that Dr. Bratton had certified the bills.

### 2.     Up-coding of Unskilled Exercise Assistance.

194.     In bills issued to GEICO, Big City and Dr. Elias classify their services utilizing a billing code system created by the American Medical Association ("AMA"), which relies on unique numeric codes known as "Current Procedural Terminology codes" or "CPT codes."

195.     By including CPT codes on their bills, Big City and Dr. Elias intentionally represented to GEICO that the listed modalities itemized on the records and bills were performed in a manner required by AMA's CPT code requirements and AMA guidelines.

196.     Big City and Dr. Elias intentionally submitted medical records and bills containing/utilizing improper and/or deceptive CPT codes, in a manner that tended to make non-compensable or less valuable services appear as both compensable and valuable.

197.     CPT code 97110 is defined by the AMA to indicate that a qualified health care professional rendered one-on-one assistance to a patient who was performing therapeutic exercise.

198.     CPT code 97110 specifically describes the rendering of a particular therapeutic procedure as "intended to effect change through the application of clinical skills and/or services that attempt to improve function."

199.     The use of CPT code 97110 is a representation by Big City and Dr. Elias that a "physician or other qualified healthcare professional" treated the GEICO claimant through direct (one-on-one) interaction, in therapeutic exercises to develop strength, endurance, range of motion, and flexibility.

200.     The AMA unambiguously defines a qualified healthcare professional as an "individual who is qualified by education, training, licensure/regulation (when applicable) … who performs a professional service within his/her scope of practice and independently reports that professional service."

201.     The term "therapist" means a person trained in methods of treating illness and authorized to apply those methods.

202.     The definitions by the AMA in the CPT code manual for CPT code 97110, for 2014 to present are filed herewith as **Exhibit 7**.

203.     Each unit of the service indicated by CPT code 97110 indicates fifteen minutes of that service.

204.       In 2014, Big City billed at a rate of $95 per fifteen-minute unit of services billed under CPT code 97110, or the rate of $380 per hour.  An hour would be four units of the service.

205.       In late-2014 and throughout 2015, Big City billed $70 per fifteen-minute unit of services identified as CPT code 97110, or the rate of $280 per hour.  An hour would be four units of the service.

206.       In Big City records submitted to GEICO, Dr. Bratton intentionally referred to the individuals performing services under CPT code 97110 as "therapists."

207.       The patient records representing that the Big City staff are "therapists" are summarized in **Exhibit 8**.

208.       By intentionally representing that "therapists" rendered therapeutic exercise services, and intentionally transmitting those records to GEICO, Big City, Dr. Elias, and Dr. Bratton intentionally suggested that the person rendering the services was trained and licensed to participate clinically in the rendering of "therapy," *i.e.*, is a medical doctor, chiropractor, physical therapist, or physical therapy assistant.  (*See* 233 Code of Massachusetts Regulations, section 4.03(2), *and* Massachusetts General Laws chapter 112, sections 23A, 23C, 23H and 23J).

209.       The records and bills submitted by Big City, Dr. Elias, and Dr. Bratton were intentionally false and misleading in that no person qualified and licensed to perform "therapy" assisted patients one-on-one, such as to justify any charge for services under CPT code 97110.

210.       The charges issued by Big City for its staff's unlicensed and unskilled assistance with gym exercise, were intentionally and materially in excess of the value and cost of such services.

211.     Big City and Dr. Elias intentionally sent false representations to GEICO that Dr. Bratton certified that the services were appropriately valued and described in bills and records.

212.     Dr. Bratton never certified that the services qualified for being coded under CPT code 97110.

213.     Dr. Bratton never certified that the services were appropriately valued at between $280 and $380 per hour.

214.     By falsely claiming in invoices that a "physician or other qualified healthcare professional" had rendered therapeutic exercise services to GEICO insured patients, Big City and Dr. Elias made a false statement of a material fact in the submission of each claim in violation of Massachusetts chiropractic regulations 233 CMR 4.09(d) and 233 CMR 4.11(2)(a).

215.     By intentionally allowing Big City and Dr. Elias to falsely certify bills and records on her behalf, Dr. Bratton engaged in an unfair and deceptive act in business.

216.     By intentionally and falsely reporting that "therapists" had rendered therapeutic exercise services to GEICO-insured patients, Big City, Dr. Elias, and Dr. Bratton made a false statement of a material fact in the submission of each claim in violation of Massachusetts chiropractic regulation 233 CMR 4.11(2)(a).

217.     The violation of the above-referenced Massachusetts regulation is a *per se* unfair or deceptive act in the conduct of trade or commerce within the meaning of Massachusetts General Laws chapter 93A, in that the failure to disclose was deceptive and misleading in connection with the sale of services and comprised violations of the "statutes, rules, regulations or laws meant for the protection of the public's health, safety and welfare." *See* 940 Code of Massachusetts Regulations, section 3.16(2), (3).

218.     GEICO paid bills of Big City in reliance of the coding of the services under CPT code 97110.

219.     There is no CPT code for assistance of an unskilled person or gym trainer with fitness exercise.

220.     GEICO would have denied the demands for payment if Big City had attempted to bill the unskilled assistance with gym exercise to it, without a CPT code.

221.     Big City, Dr. Elias, and Dr. Bratton knew that fitness trainer certifications do not qualify Big City staff members to perform and bill for services under CPT code 97110, and do not qualify those persons as "therapists."

222.     The intentionally false and misleading statements by Big City, Dr. Elias, and Dr. Bratton foreseeably will cause other persons to assert inflated and unfounded demands against GEICO for payment based on Big City billing invoices, thereby damaging GEICO by fostering disagreement and disputes with third parties.

223.     Although GEICO PIP benefits are available regardless of fault, the proportion of claimants treating there who are considered by preliminary insurance standards to be "at fault" is small.

224.     A large majority of GEICO PIP claimants who treated at Big City have been adjudged by insurance standards as not at fault.

225.     Big City serves patients and their attorneys by generating between two and eight thousand dollars in health care bills, regardless of the condition of the patient, so as to reliably provide a foundation for automobile tort claims by individuals who consider themselves to be not-at-fault for automobile incidents.

## VII.    ALLEGATIONS CONCERNING SPECIFIC INSURANCE CLAIMS

226.    The above-referenced allegations consist of patterns and practices of conduct by defendants concerning multiple specific patients and insurance claims.

227.    The patterns and practices are demonstrated by the following exemplar instances of conduct concerning specific patients and claims, which are illustrative of defendants' acts of fraud and deceit, but are not exhaustive of all specific instances of the conduct.

### A.    Claimant: M.C.; GEICO Claim No.: 052776160101018; Date of Loss: December 7, 2014.

228.    On December 7, 2014 M.C. reportedly was involved in a motor vehicle accident.

229.    Claimant M.C. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

230.    GEICO investigated Big City's requests for payment, and M.C. provided a sworn statement.

231.    M.C. received unsolicited contact from Ms. Davis.

232.    Ms. Davis held herself out to M.C. as being under the supervision of an attorney.

233.    Ms. Davis intentionally directed M.C. to fill out paperwork for this insurance claim and to establish representation with an attorney on Ms. Davis' choosing.

234.    M.C. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation by an unlicensed staff member, and assistance with exercise by unqualified persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

235.     Dr. Bratton intentionally failed to supervise M.C.'s exercise at Big City, but Big City nonetheless intentionally represented that Dr. Bratton was the provider of those services.

236.     Claimant M.C. testified in part, as follows:

Q.     [D]id the doctor [Dr. Bratton] . . . treat with you [M.C.] in the gym?

A.     No.  She is . . . too busy.  She doesn't go to the gym with me.

Q.     She never stood and watched you exercise in the gym?

A.     No.

                              * * *

Q.     When you would work out in the gym on the machines, would you see the doctor in the office, the exam room before the gym or after the gym?

A.     After the gym.

                              * * *

A.     First I sign my name. I stay in the waiting room. Then I go for gym. After the gym I just wait for my time to see the doctor.

(*See* **Exhibit 9** at pp. 59 – 61).

237.     The individual or individuals who assisted M.C. with exercise were unskilled and unlicensed in the treatment of injured persons by physical therapy.

238.     Dr. Bratton's intentional delegation of physical therapy conducted on site at Big City, to unlicensed and unskilled persons, was a violation of Massachusetts chiropractic regulations and the standard of care.

239.     Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unskilled and unlicensed staff members who purportedly assisted M.C. in connection with exercise were, in fact, qualified healthcare professionals.

240.     Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in M.C.'s exercise were, in fact, qualified "therapists."

241.     The amounts that Big City billed to GEICO with respect to M.C. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

242.     Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to M.C.

**B.     Claimant:  C.G.; GEICO Claim No.: 0502776160101018;
          Date of Loss: December 7, 2014.**

243.     On December 7, 2014, C.G. reportedly was involved in a motor vehicle accident.

244.     C.G. applied for PIP benefits from GEICO in connection with the services rendered by Big City.

245.     GEICO investigated Big City's requests for payment and C.G. provided a sworn statement.

246.     C.G. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation by an unlicensed Big City staff member, and assistance with exercise by unskilled persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

247.     Dr. Bratton intentionally failed to supervise C.G.'s exercise at Big City but Big City nonetheless represented that Dr. Bratton was the provider of those services.

248.     Claimant C.G.'s testimony read in part, as follows:

A.     And then she [the assistant] connect the electrical [stimulation] . . . on your back.

* * *

Q.     Okay. And then you would see the doctor after that?

| A. | Yeah.  After the time yes. |
| Q. | Dr. Megan [Bratton]? |
| A. | Dr. Megan came into the room. |
| Q. | She's the last person you saw that day? |
| A. | Yes, correct. |

* * *

| Q. | And when you went to the gym, did somebody stand with you when you exercised? |
| A. | Yes, yes. |
| Q. | Was that ever the doctor or was it the staff? |
| A. | No, the staff. |

(*See* **Exhibit 10** at pp. 67, 77 – 78).

249.    Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unskilled and unlicensed staff members who purportedly assisted C.G. in connection with exercise were, in fact, qualified healthcare professionals.

250.    Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in C.G.'s exercise were, in fact, qualified "therapists."

251.    The amounts that Big City billed to GEICO with respect to C.G. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

252.    Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to C.G.

**C.    Claimant:  F.J.; GEICO Claim No.: 0383928010101012;
Date of Loss: November 15, 2014.**

253.    On November 15, 2014 F.J. allegedly was involved in a motor vehicle accident.

254.    F.J. applied for PIP benefits from GEICO in connection with services purportedly rendered by Big City.

255.    GEICO investigated Big City's requests for payment and F.J. provided a sworn statement.

256.    F.J. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation by an unlicensed Big City staff member, and assistance with exercise by unskilled persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

257.    Dr. Bratton intentionally failed to supervise F.J.'s exercise at Big City, but Big City nonetheless represented that Dr. Bratton was the provider of those services.

258.    F.J. testified as follows:

Q.    And when you were doing the exercises in the gym, would you show up for treatment and do the exercises in the gym first or see the doctor first?

A.    Exercise first and then the doctor at the end.

(*See* **Exhibit 11** at pp. 45 – 46, 50).

259.    Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unlicensed staff members that purportedly treated F.J. were, in fact, qualified healthcare professionals.

260.    Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in F.J.'s exercise were, in fact, qualified "therapists."

261.    The amounts that Big City billed to GEICO with respect to F.J. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

262.    Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to F.J.

**D.     Claimant:  G.S.; GEICO Claim No.:  0503722320101042;
        Date of Loss:  February 4, 2015.**

263.     On February 4, 2015, G.S. reportedly was involved in a motor vehicle accident.

264.     G.S. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

265.     GEICO investigated Big City's requests for payment and G.S. provided a sworn statement.

266.     G.S. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation by an unlicensed Big City staff member, and assistance with exercise by unskilled persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

267.     Dr. Bratton intentionally failed to supervise G.S.'s exercise at Big City, but Big City nonetheless represented that Dr. Bratton was the provider of those services.

268.     For approximately one month at the end of the course of services, Dr. Bratton either directed the patient to continue treating despite the absence of a condition necessitating that treatment, intentionally failing to inquire whether the patient's conditions had ended.

269.     In that regard, G.S. testified as follows:

Q.     [W]hen did your lower back pain go away?

A.     Maybe the first week of May.

Q.     Were you still treating?

A.     Yeah.

Q.     How long after that did they [Big City] keep you treating, or did
       they let you leave?

A.     Oh, I'm still – I still go there.

Q.     You still go there?

A.     Yeah.

Q.      Even though you don't have pain anymore, they still want you to
        go?

A.      Yeah.

                              * * *

Q.      Do you know why they're still making you go?

A.      I think we finish in the end of May.  That's what they said.

Q.      Even though your back's feeling fine, they want you to go to the
        end of May?

A.      Yeah.

Q.      Who told you that?

A.      I think the doctor.  Well, they didn't ask me if my back was still
        hurting or not.

                              * * *

Q.      [T]he doctor must ask every day, or the workers, how you're
        feeling, right?

A.      No.

(*See* **Exhibit 12** at pp. 36 – 38).

270.    Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unlicensed staff members that purportedly treated G.S. were, in fact, qualified healthcare professionals.

271.    Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in G.S.'s exercise were, in fact, qualified "therapists."

272.    The amounts that Big City billed to GEICO with respect to G.S. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

273.    Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to G.S.

**E.**    **Claimant:  A.W.; GEICO Claim No.:  0525131450101018;**
      **Date of Loss: March 14, 2015.**

274.    On March 14, 2015, A.W. reportedly was involved in a motor vehicle accident and subsequently presented at Big City for treatment.

275.    A.W. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

276.    GEICO investigated Big City's requests for payment and A.W. provided a sworn statement.

277.    A.W. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation by an unlicensed Big City staff member, and assistance with exercise by unskilled persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

278.    Dr. Bratton intentionally failed to supervise A.W.'s exercise at Big City but Big City nonetheless represented that Dr. Bratton was the provider of those services.

279.    Patient A.W. testified as follows:

Q.    [W]ho does the ice and the machine with the little patches –

A.    One of the workers.

* * *

Q.    [W]hen do you see Megan [Bratton]?

A.    Every time I go to the office.

Q.    Before or after you do the gym?

A.    After I do the gym.

(*See* **Exhibit 13** at pp. 62 & 66).

280.    Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unlicensed staff members that purportedly treated A.W. were, in fact, qualified healthcare professionals.

281.     Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in A.W.'s exercise were, in fact, qualified "therapists."

282.     The amounts that Big City billed to GEICO with respect to A.W. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

283.     Big City intentionally and falsely held out Dr. Bratton as having been the provider with respect to the exercise and electrical muscle stimulation, and that she certified the bills concerning charges for services to A.W.

**F.     Claimant: D.S.; GEICO Claim No.: 040307051010112; Date of Loss: March 15, 2015.**

284.     On March 15, 2015, D.S. reportedly was involved in a motor vehicle accident.

285.     D.S. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

286.     GEICO investigated Big City's requests for payment and D.S. provided a sworn statement.

287.     D.S. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation by an unlicensed Big City staff member, and assistance with exercise by unskilled persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

288.     Dr. Bratton intentionally failed to supervise D.S.'s exercise at Big City but Big City nonetheless represented that Dr. Bratton was the provider of those services.

289.     In that regard, D.S. testified as follows:

Q.     So then when you went back for your next visits, was it always seeing one of the female staff members first, doctor second?

A.     Yes.

* * *

- 40 -

Q.      Would you go to the gym first or would you see the doctor first?

A.      To the gym first.

(*See* **Exhibit 14** at pp. 61 & 64).

290.    Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unlicensed staff members that purportedly treated D.S. were, in fact, qualified healthcare professionals.

291.    Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in D.S.'s exercise were, in fact, qualified "therapists."

292.    The amounts that Big City intentionally billed to GEICO with respect to D.S. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

293.    Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to D.S.

**G.      Claimant:  J.A.; GEICO Claim No.:  0427237950101033;
          Date of Loss:  April 14, 2015.**

294.    On April 14, 2015, J.A. reportedly was involved in a motor vehicle accident.

295.    J.A. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

296.    GEICO investigated Big City's requests for payment and J.A. provided a sworn statement.

297.    J.A. met Ms. Davis in the office of PSI before J.A. sought services at Big City.

298.    Ms. Davis intentionally assisted J.A. in completing paperwork for the insurance claim.

299.    Ms. Davis intentionally instructed J.A. to sign the legal documents.

300.     Ms. Davis intentionally gave this advice to J.A. without having J.A. at any time meet with the attorney to whom she ultimately referred the case.

301.     When J.A. met with Ms. Davis, he knew he would go to Big City even though he had not been there before.

302.     J.A. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation by an unlicensed Big City staff member, and assistance with exercise by unskilled persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

303.     Dr. Bratton intentionally failed to supervise J.A.'s exercise at Big City but Big City nonetheless represented that Dr. Bratton was the provider of those services.

304.     J.A. testified as follows:

Q.     So after you finished your exercises, would you go home? What would happen after you completed the exercises?

A.     Yeah, I would go home.

Q.     You wouldn't see the doctor?

A.     Oh. No, you would have to see the doctor.

Q.     So when you've completed your exercises, then you would go see the doctor?

A.     Yeah, you would go see the doctor.

Q.     You'd be placed in that same room again?

A.     In the back with the bed.

Q.     And then you'd wait in there for the doctor to come?

A.     Yeah.

Q.     And then the doctor would come in there, and that would be the first time you saw her?

A.     Yes.

(*See* **Exhibit 15** at pp. 57 – 58).

305.     Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unlicensed staff members that purportedly treated J.A. were, in fact, qualified healthcare professionals.

306.     Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in J.A.'s exercise were, in fact, qualified "therapists."

307.     The amounts that Big City billed to GEICO with respect to J.A. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

308.     Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to J.A.

**H.     Claimant:  L.A.; GEICO Claim No.: 0468312910101025;
         Date of Loss:  October 21, 2014.**

309.     On October 21, 2014, L.A. reportedly was involved in a motor vehicle accident.

310.     L.A. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

311.     GEICO investigated Big City's requests for payment and L.A. provided a sworn statement.

312.     L.A. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation by an unlicensed Big City staff member, and assistance with exercise by unskilled persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

313.     Dr. Bratton intentionally failed to supervise L.A.'s exercise at Big City, but Big City nonetheless represented that Dr. Bratton was the provider of those services.

314.     L.A. testified as follows:

Q.          --When you would come in you would do your exercises first, and then you would see the doctor?

> A. Yes.
>
> \* \* \*
>
> Q. How long would you do exercises for before you would see the doctor? An estimate is fine.
>
> A. Maybe thirty minutes or more.

(*See* **Exhibit 16** at pp. 60 & 63).

315. Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unlicensed staff members, who purportedly treated L.A. were, in fact, qualified healthcare professionals.

316. Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in L.A.'s exercise were, in fact, qualified "therapists."

317. The amounts that Big City billed to GEICO with respect to L.A. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

318. Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to L.A.

**I.     Claimant:  A.J.M.; GEICO Claim No.:  0515706760101022; Date of Loss:  January 8, 2015.**

319. On January 8, 2015, A.J.M. reportedly was involved in a motor vehicle accident and subsequently presented at Big City for treatment.

320. A.J.M. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

321. GEICO investigated Big City's requests for payment and A.J.M. provided a sworn statement.

322.     A.J.M. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation by an unlicensed Big City staff member, and assistance with exercise by unskilled persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

323.     Dr. Bratton intentionally failed to supervise A.J.M.'s exercise at Big City but Big City nonetheless represented that Dr. Bratton was the provider of those services.

324.     A.J.M. testified as follows:

Q.     Okay. So it was always the same woman who did the electrical muscle stimulation and always the doctor who you saw second, correct?

A.     Yes.

(*See* **Exhibit 17** at pp. 69 – 70).

325.     Big City also intentionally billed GEICO for assistance with exercise that never occurred.

326.     A.J.M. testified as follows:

Q.     Did they [Big City] ever have you exercise with weights?

A.     No.  Because I never went to the gym.

Q.     Because they say on January 13, 2015, "For the specific exercises and weights [A.J.M] did today in therapy please see her daily patient treatment log."  But you say there were no weights?

Q.     Correct?

A.     Yeah.

(*See id.* at 75 – 76).

327.     Big City intentionally and falsely held out Dr. Bratton as having certified bills concerning charges for services to A.J.M.

328.     The amounts that Big City billed to GEICO with respect to A.J.M. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

**J.      Claimant:  A.S.; GEICO Claim No.:  0491205440101047;
         Date of Loss:  December 12, 2014.**

329.     On December 12, 2014, A.S. reportedly was involved in a motor vehicle accident.

330.     A.S. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

331.     GEICO investigated Big City's requests for payment and A.S. provided a sworn statement.

332.     A.S. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation and assistance with exercise by an unlicensed Big City staff member and assistance with exercise by unskilled persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

333.     Dr. Bratton intentionally failed to supervise A.S.'s exercise at Big City but Big City nonetheless represented that Dr. Bratton was the provider of those services.

334.     A.S. testified:

Q.      Did you see the doctor the first day you were there for treatment?

A.      Yes.

Q.      When does she come in? Is she third?

A.      She came to me at the end.

Q.      Okay. So this would be the third lady you saw on the first visit where you had treatment?

A.      Yes.

* * *

Q.      Okay. Alright. And how did it change after those first few visits?

A.      Because I would go – come in and go straight to working out, warming up on the bike first and then doing the process and exercises after. I think it was only about four or five machines, the process after that. And then after I exercise, I would exercise

- 46 -

maybe about an hour, um and then after my hour, it's fun time. I
got to go in the back and get adjusted.

(*See* **Exhibit 18** at pp. 106 & 114).

335.     Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unlicensed staff members that purportedly treated A.S. were, in fact, qualified healthcare professionals.

336.     Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in A.S.'s exercise were, in fact, qualified "therapists."

337.     The amounts that Big City billed to GEICO with respect to A.S. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

338.     Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to A.S.

**K.     Claimant:  D.S.; GEICO Claim No.: 0503722320101059;
Date of Loss:  February 13, 2015.**

339.     On February 13, 2015, D.S. reportedly was involved in a motor vehicle accident.

340.     D.S. applied for PIP benefits in connection with the services purportedly rendered by Big City.

341.     GEICO investigated Big City's requests for payment and D.S. provided a sworn statement.

342.     D.S. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation and assistance with exercise by an unlicensed Big City staff member, and assistance with exercise by unskilled persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

343.     Dr. Bratton intentionally failed to supervise D.S.'s exercise at Big City but Big City nonetheless represented that Dr. Bratton was the provider of those services.

344.     D.S. testified as follows:

Q.     And at what point does the chiropractor like rub your neck, or is that just at the initial visit?

A.     After they eliminated all the different treatments, that's when she started to come in and give me treatment.

* * *

Q.     What do you do first when you're exercising? Do you go to the machines first or do you go to the doctor first?

A.     After the machines, I go to the doctor.

Q.     So in that phase, you show up, get called back, go to the machines, do your machines, then see the doctor?

A.     Yes.

(See **Exhibit 19** at pp. 50 – 51).

345.     D.S. was treated with therapeutic exercises by staff members without first being assessed by Dr. Bratton.

346.     Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unlicensed staff members, who purportedly treated D.S. were, in fact, qualified healthcare professionals.

347.     Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in D.S.'s exercise were, in fact, qualified "therapists."

348.     The amounts that Big City billed to GEICO with respect to D.S. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

349.     Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to D.S.

- 48 -

**L.    Claimant:  S.A.; GEICO Claim No.:  0420212310101046;
        Date of Loss:  February 8, 2015.**

350.    On February 8, 2015, S.A. reportedly was involved in a motor vehicle accident.

351.    S.A. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

352.    GEICO investigated Big City's requests for payment and S.A. provided a sworn statement.

353.    S.A. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation and assistance with exercise by an unlicensed Big City staff member, and assistance with exercise by unskilled persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

354.    Dr. Bratton intentionally failed to supervise S.A.'s exercise at Big City but Big City nonetheless represented that Dr. Bratton was the provider of those services.

355.    S.A. testified as follows:

Q.    Okay. Do you see the doctor first or do you get the electrical muscle stimulation first?

A.    The electrical muscle stimulation.

Q.    Okay. And that's with one of the staff?

A.    Yes.

Q.    Okay. Not with Dr. Bratton?

A.    No.

Q.    Okay. Does she ever give you treatment?

A.    No.

Q.    Did she ever give it to you?

A.    No.

\* \* \*

Q.      Okay. And then what would you do after you worked out in the gym? Would you go home?

A.      After I worked out, I would go meet with the doctor.

(*See* **Exhibit 20** at pp. 63 – 64 & 79).

356.    Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unlicensed staff members, who purportedly treated S.A. were, in fact, qualified healthcare professionals.

357.    Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in S.A.'s exercise were, in fact, qualified "therapists."

358.    The amounts that Big City billed to GEICO with respect to S.A. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

359.    Dr. Elias and Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to S.A.

**M.      Claimant:  T.P.H.; GEICO Claim No.:  0497643830101025; Date of Loss:  March 16, 2015.**

360.    On March 16, 2015, T.P.H. reportedly was involved in a motor vehicle accident and subsequently presented at Big City for treatment.

361.    GEICO investigated Big City's requests for payment and T.P.H. provided a sworn statement.

362.    T.P.H. was referred by a family member to Ms. Davis after an earlier, separate accident.

363.    Ms. Davis intentionally allowed T.P.H. to believe that Ms. Davis was a lawyer.

364.     Ms. Davis intentionally instructed T.P.H. to complete an application to GEICO for personal injury protection benefits.  Ms. Davis filled out the insurance claim form and advised T.P.H. to sign it, which T.P.H. did.

365.     Ms. Davis directed T.P.H. to go to Big City for services.

366.     On information and belief, Ms. Davis referred T.P.H. to an attorney who handles personal injury claims, who held himself out as attorney for T.P.H. before T.P.H. had heard of him, spoke with him, or met him.

367.     T.P.H. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

368.     T.P.H. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation and assistance with exercise by an unlicensed Big City staff member, and assistance with exercise by unskilled persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

369.     Dr. Bratton intentionally failed to supervise T.P.H.'s exercise at Big City, but Big City nonetheless represented that Dr. Bratton was the provider of those services.

370.     T.P.H. testified as follows:

> Q.     [D]id they [Big City] give you any other treatment during that first phase of treatment before you exercised in the gym, on the knee or ankle or just the patches?

> A.     After the treatment, the doctor would come back in the room and she'll lay me face down and examine me.

> * * *

> Q.     In the first phase of treatment, did you see the doctor first when you would show up or second?

> A.     I would do the treatment first, and then the doc will come in.

> Q.     So you'd have you treatment first and then, second, it would be the doctor visit?

- 51 -

A.        Yeah.

Q.        So, the doctor would evaluate you after you saw the woman for treatment with the little patches?

A.        Uh –huh. Yes

Q.        So, first you'd show up, you'd go into a room, you'd get the little patches with the wires, and then you would see the doctor after that.

A.        Yes.

* * *

Q.        So, she comes in, and tell me what happens.

A.        She'll come in and she'll ask one of the staff that's working with us if, you know, we wanted to stop and come and see her so it wouldn't be a longer wait after we finish our workout.

Q.        I see, okay. So, if she was freed up, she might come in the gym and say, "Can I take [T.P.H.] to my office and do my treatment? And I'll bring her back so she doesn't have to wait so long."

A.        Yes.

Q.        But the doctor is not there counting or watching the repetitions that you do, right?

A.        No.

Q.        She doesn't stand there like the other staff?

A.        No.

(*See* **Exhibit 21** at pp. 98 – 99, 107 – 108).

371.        Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unlicensed staff members, who purportedly treated T.P.H. were, in fact, qualified healthcare professionals.

372.        Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in T.P.H.'s exercise were, in fact, qualified "therapists."

373.     The amounts that Big City billed to GEICO with respect to T.P.H. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

374.     Dr. Elias and Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to T.P.H.

**N.     Claimant: B.S.; GEICO Claim No.: 0484070640101018; Date of Loss: August 14, 2014.**

375.     On August 14, 2014, B.S. reportedly was involved in a motor vehicle accident.

376.     B.S. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

377.     GEICO investigated Big City's requests for payment and B.S. provided a sworn statement.

378.     B.S. routinely met with Dr. Bratton only *after* receiving electrical muscle stimulation and assistance with exercise by an unlicensed Big City staff member.

379.     Dr. Bratton intentionally failed to supervise B.S.'s exercise at Big City but Big City nonetheless represented that Dr. Bratton was the provider of those services.

380.     B.S. testified as follows:

Q.     All right. Did she [Dr. Bratton] say you were going to do exercises?

A.     Um, not at that time, no.

Q.     Okay. At any point did she say you were going to have to exercise?

A.     Yes, yes. But, you know, down the road.

Q.     Did she get to that point or did you switch?

A.     No, I switched.

(*See* **Exhibit 22** at pp. 68 – 69).

381.     Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of chiropractic records (in support of their invoices) that the unlicensed staff members that purportedly treated B.S. were, in fact, therapists.

382.     The amounts that Big City billed to GEICO with respect to B.S. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

383.     Dr. Elias and Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to B.S.

**O.     Claimant:  N.F.; GEICO Claim No.:  0500514330101036;
Date of Loss:  November 22, 2014.**

384.     On November 22, 2014, N.F. reportedly was involved in a motor vehicle accident.

385.     N.F. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

386.     GEICO investigated Big City's requests for payment and N.F. provided a sworn statement.

387.     N.F. routinely met with Dr. Bratton only *after* receiving assistance with exercise by an unlicensed Big City staff member.

388.     Dr. Bratton intentionally failed to supervise N.F.'s exercise at Big City but Big City nonetheless represented that Dr. Bratton was the provider of those services.

389.     N.F. testified as follows:

Q.     Okay. Does she help you do the exercises when you are in the gym?

A.     Who, the doctor?

Q.     Yes.

A.      No. The assistant, like I said, If I'm – like say I can't do one or it's getting to be too much pain – she'll stop, tell me to take a break.

Q.      Okay. Okay. But the doctor doesn't come out into the gym? That is just the – Kim or the other woman?

A.      I've seen the doctor come out into the gym but not to assist my –

Q.      Just walking through?

A.      I believe she came to just make sure people were doing what they were supposed to do.

Q.      Did she ever help you?

A.      No.

(*See* **Exhibit 23** at pp. 106 – 107).

390.    Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unlicensed staff members, who purportedly treated N.F. were, in fact, qualified healthcare professionals.

391.    Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in N.F.'s exercise were, in fact, qualified "therapists."

392.    The amounts that Big City billed to GEICO with respect to N.F. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

393.    Dr. Elias and Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to N.F.

**P.      Claimant:  S.R.; GEICO Claim No.:  052776160101018;
          Date of Loss:  December 7, 2014.**

394.    On December 7, 2014, S.R. reportedly was involved in a motor vehicle accident.

395.     S.R. applied for PIP benefits from GEICO in connection with the services purportedly rendered by Big City.

396.     GEICO investigated Big City's requests for payment and S.R. provided a sworn statement.

397.     S.R. confirmed that she routinely met with Dr. Bratton only *after* receiving assistance with exercise by an unlicensed Big City staff member.

398.     Dr. Bratton intentionally failed to supervise S.R.'s exercise at Big City but Big City nonetheless represented that Dr. Bratton was the provider of those services.

399.     S.R. testified as follows:

Q.     You went to the exercise room --- from the waiting room, and what did you do once you got to the exercise room?

A.     The bike.

Q.     They put you right on the bike?

A.     Uh-huh.

A.     Did you see a doctor – excuse me. Did you see the lady with the brown hair and the brown eyes first?

A.     No.

Q.     Or did you just go right to the bike?

A.     Um, I don't remember. I think I went right to the bike.

* * *

Q.     Okay. Now, did you always go back and see the lady with the brown hair and the brown eyes after you went to the gym.

A.     Yes.

Q.     Every time?

A.     Yep.

(*See* **Exhibit 24** at pp. 114 & 130).

400. S.R. was treated with therapeutic exercises by staff members without first being assessed by Dr. Bratton.

401. Big City, Dr. Elias, and Dr. Bratton intentionally misrepresented in the submission of invoices to GEICO that unlicensed staff members, who purportedly treated S.R. were, in fact, qualified healthcare professionals.

402. Big City and Dr. Bratton intentionally and falsely represented to GEICO that the individuals who assisted in S.R.'s exercise were, in fact, qualified "therapists."

403. The amounts that Big City billed to GEICO with respect to S.R. overall, and specifically with respect to the supervision of exercise and electrical muscle stimulation by staff at Big City, is set forth on **Exhibit 2A** filed herewith.

404. Big City intentionally and falsely held out Dr. Bratton as having certified the bills concerning charges for services to S.R.

**VIII.   CAUSES OF ACTION**

**COUNT I:  VIOLATIONS OF 18 U.S.C. § 1962(c)**
**(BIG CITY ENTERPRISE)**
**(Against Dr. Elias, Dr. Bratton, and Ms. Davis)**

405. GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

406. Big City constitutes an "enterprise," as defined in 18 U.S.C. § 1961(4).

407. Big City is engaged in, and its activities affect, interstate commerce.

408. In connection with each of the claims identified in this Complaint, Dr. Elias and Dr. Bratton, and others, intentionally caused to be prepared and mailed false medical documentation by Big City, or knew that such false medical documentation would be submitted in the ordinary course of Big City's business through the U.S. Mail/wires, in furtherance of the scheme to defraud.

409.     Dr. Elias and Dr. Bratton employed, and intended that two or more mailings/wires demanding payment from GEICO on certain dates, including, but not limited to, those dates identified in the U.S. Mail/wires Fraud Chart would be sent to GEICO.  **Exhibit 25**, incorporated herein in its entirety.

410.     The defendants were aware that their business would result in an extensive pattern of use of the U.S. Mail and interstate wires.

411.     Among other things, medical records, bills, invoices, premium checks and various other documents were delivered to GEICO through the U.S. Mail/wires.

412.     Payments to Big City from GEICO were transmitted through the U.S. Mail/wires.

413.     As documented above, Dr. Elias and Dr. Bratton, while operating and managing Big City and using relationships with one another, continuously and intentionally submitted, caused to be submitted, or intended that documentation would be submitted to GEICO for medical expenses and/or services that were purportedly performed at and/or by Big City to collect payment from GEICO under the personal injury protection benefits portion of the GEICO policies and applicable provisions of the Massachusetts PIP statute.

414.     As a result of, and in reasonable reliance upon, these misleading documents and misrepresentations, GEICO, by its agents and employees, issued drafts for payment to Big City for the benefit of the Dr. Elias and Dr. Bratton that otherwise would not have been paid.

415.     GEICO also incurred costs and expenses in investigation and handling misleading demands for payment.

416.     The pattern by Dr. Elias and Dr. Bratton of submitting fraudulent claims that appeared legitimate on their face prevented GEICO from discovering the fraudulent scheme for a

prolonged period of time, thus enabling Dr. Elias and Dr. Bratton to continue their fraudulent scheme without detection.

417.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §§ 1341 (Mail Fraud) and 1343 (wire fraud).

418.    By submitting, or agreeing that the U.S. Mail/wires would be used, to submit numerous fraudulent claims in an ongoing scheme, Dr. Elias and Dr. Bratton engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

419.    Dr. Elias intentionally caused Ms. Davis to advertise bribes to patients to induce them to participate in the submission of fraudulent insurance claims through PS Funding, in violation of Massachusetts General Laws chapter 266, section 111C.

420.    Dr. Elias and Ms. Davis knew that Ms. Davis solicits patients through PS Funding and PSI by offering payments of money to seek services at Big City.

421.    Dr. Elias, and on information and belief, Ms. Davis, knew that Big City was seeking patients to allow Dr. Elias, by and through Big City, to fraudulently bill GEICO and other insurers for skilled, independent therapy that actually was assisted by unskilled and unqualified persons such as those recently hired by Big City to transport patients in motor vehicles.

422.    Violation of Massachusetts General Laws chapter 266, section 111C is a crime punishable by imprisonment for more than one year.

423.    Patients have a duty not to deceive or act unfairly to an insurer by participating in a scheme to extract payment for unnecessary and unreasonable services.

424.    By custom and contract, patients procure insured health care services solely or predominately for the purpose of improving their physical condition.

425.     Dr. Elias and Ms. Davis intentionally advertised the payment of funds to patients through PS Funding in violation of Massachusetts General Laws chapter 266, section 111C, to influence patients to act contrary to custom and their lawful duties, and to incur health care services for pecuniary gain.

426.     The payments from Dr. Elias and Ms. Davis through PS Funding in violation of Massachusetts General Laws chapter 266, section 111C constituted a bribery scheme within the meaning of the RICO Act.

427.     On information and belief, Dr. Elias and Ms. Davis intentionally effectuated the bribery scheme in connection with payments to two or more patients and insurance claims, causing damages to GEICO.

428.     The payments from Dr. Elias and Ms. Davis through PS Funding in violation of Massachusetts General Laws chapter 266, section 111C, constituted racketeering activity within the meaning of 18 U.S.C. § 1962(c).

429.     Dr. Elias and Ms. Davis intentionally mischaracterized advertised payments to patients for treatment at Big City as "loans."

430.     The payments from Dr. Elias and Ms. Davis to patients are, in fact, unlawful kickbacks to promote the carrying on of insurance fraud and unlawful practices.

431.     The said intentionally mischaracterized payments were the proceeds of the fraudulent scheme ongoing at the relevant time at Big City.

432.     The intentionally mischaracterized payments were used to conduct or facilitate the corruption of patients and securing of their cooperation in the racketeering scheme by the defendants.

433.     The kickbacks intentionally were directed through Ms. Davis and PS Funding to obscure the nature, source, and control of the kickback payments.

434.     On information and belief, some or all of the mischaracterized payments were conducted through a financial institution.

435.     The intentional actions of Dr. Elias and Ms. Davis in connection with the mischaracterized "loan" payments constituted the laundering of monetary instruments in violation of 18 U.S.C. § 1956.

436.     Dr. Elias and Ms. Davis engaged in a pattern of laundering of monetary instruments through Big City and PS Funding constituting racketeering conduct within the meaning of 18 U.S.C. § 1962(c).

437.     The activities alleged in this Complaint foreseeably caused funds to be expended by GEICO that otherwise GEICO would not have paid.

438.     Dr. Elias, Dr. Bratton, and Ms. Davis intentionally participated, both directly and indirectly, in the conduct of this enterprise through a pattern of racketeering activities outlined in the balance of this Complaint.

439.     Big City, Dr. Elias' network of clinics, and PS Funding were engaged in and affect Interstate commerce.

440.     GEICO is a "person," as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the fraudulent acts of Dr. Elias, Dr. Bratton, and Ms. Davis.

441.     Dr. Elias, Dr. Bratton, and Ms. Davis' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of GEICO's injury.

442.     GEICO is in the business of writing insurance and paying claims in the State of Massachusetts.

443.     Insurance fraud schemes practiced here and elsewhere have a deleterious impact on GEICO's overall financial well-being, adversely affect insurance rates and Interstate commerce, as well as the business and contractual relationships between GEICO and its insureds.

444.     GEICO foreseeably will suffer demands for payment from Big City and nonparties to this litigation based on statements and bills issued to GEICO and others, which set forth costs and expenses for health care services that were either caused or inflated by the racketeering conduct.

445.     By virtue of the violations of 18 U.S.C. § 1962(c) by Dr. Elias, Dr. Bratton, and Ms. Davis, GEICO is entitled to recover treble damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted, by them, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

**WHEREFORE**, GEICO demands judgment against Dr. Elias, Dr. Bratton, and Ms. Davis individually, jointly and severally as follows:

a.     Actual and consequential damages to be established at trial;

b.     Treble damages, interest, costs and reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c);

c.     Injunctive relief, pursuant to 18 U.S.C. § 1964(a),  as the Court deems just, enjoining Dr. Elias, Dr. Bratton, and Ms. Davis  from engaging in further wrongful activities as alleged in the Complaint and requiring them to disclaim all bills and demands for payment issued to patients who reported that they were injured in a motor vehicle incident; and,

d.     All other relief this Court deems just.

### COUNT II:  VIOLATIONS OF 18 U.S.C. § 1962(d)
### (BIG CITY CONSPIRACY)
### (Against Dr. Elias, Dr. Bratton and Ms. Davis)

446.     GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

447.     Dr. Elias, Dr. Bratton, and Ms. Davis intentionally conspired with each other to further, facilitate, support, and/or operate the Big City enterprise.

448.     As such, Dr. Elias, Dr. Bratton, and Ms. Davis conspired to violate 18 U.S.C. § 1962(c) and to perpetrate a common scheme and plan to defraud.

449.     The purpose of the conspiracy was to obtain insurance benefits from GEICO on behalf of Big City, even though Big City failed to earn those benefits by virtue of its unlawful conduct.

450.     Dr. Elias, Dr. Bratton, and Ms. Davis intended this unlawful purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to GEICO of insurance claim documents containing material misrepresentations and/or omissions.

451.     Furthermore, Ms. Davis and Dr. Elias intended the unlawful purpose to engage in money laundering and bribery of individuals to participate in the sending of improper insurance claims to GEICO by Big City.

452.     GEICO has been injured in its business and property by reason of this conspiratorial conduct, has been induced to make payment of insurance benefits, and has been subjected to inflated liability insurance claims for bodily injury as a result of the unlawful conduct described herein.

453.     By virtue of these violations of 18 U.S.C. § 1962(d), Dr. Elias, Dr. Bratton, and Ms. Davis are jointly and severally liable to GEICO, and GEICO is entitled to recover from each treble damages sustained by reason of the claims submitted by, or on behalf of Dr. Elias, Dr. Bratton, and Ms. Davis, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

**WHEREFORE**, GEICO demands judgment against Dr. Elias, Dr. Bratton, and Ms. Davis individually, jointly and severally as follows:

      a.      Actual and consequential damages to be established at trial;

      b.      Treble damages, interest, costs and reasonable attorney's fees, pursuant to 18 U.S.C. § 1964(c);

      c.      Injunctive relief, pursuant to 18 U.S.C. § 1964(a),  enjoining Dr. Elias, Dr. Bratton, and Ms. Davis  from engaging in further wrongful activities as alleged in the Complaint and requiring them to disclaim all bills and demands for payment issued to patients who reported that they were injured in a motor vehicle incident; and,

      d.      All other relief this Court deems just.

### COUNT III:  VIOLATIONS OF 18 U.S.C. § 1962(c)
### (ASSOCIATION-IN-FACT ENTERPRISE)
### (Against All Defendants)

454.      GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

455.      In each of the GEICO claims, Dr. Elias, Dr. Bratton, Big City, and others known and unknown to GEICO, intentionally caused to be prepared and submitted false, fraudulent, and/or misleading documentation using the U.S. Mail/wires for insurance claims to GEICO, in furtherance of the Defendants' scheme to defraud.  Dr. Elias, Dr. Bratton, and Big City submitted two or more mailings/wires, to demand and/or receive payment on certain dates, including, but not limited to, those dates referenced above.

456.      Correspondence, including but not limited to, claim materials, medical records, reports, and other documents were delivered to GEICO through the U.S. Mail/wires.

457.      GEICO routinely corresponded with the Defendants by sending drafts and/or requests for further information and/or other letters relating to claims through the U.S. Mail/wires.

458.     As a result of this intentionally false, fraudulent, and/or misleading documentation and other material misrepresentations, GEICO by its agents and employees, issued payment to Big City, and in turn, Elias and Bratton that would not otherwise have been issued.

459.     The Defendants' fraudulent claims, each appearing legitimate on its face, prevented GEICO from discovering the fraudulent scheme for a long period of time, enabling the Defendants to evade detection.

460.     The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. §§ 1341 (Mail Fraud) and 1343 (wire fraud).

461.     Furthermore Ms. Davis, PS Funding, PSI, Dr. Elias and Big City, engaged in the crime of money laundering indictable under 18 U.S.C. § 1956, and a state law crime involving bribery punishable by more than a year in prison, as set forth above.

462.     All the defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

463.     The unlawful activities of Dr. Elias, Dr. Bratton, Big City, Ms. Davis, PS Funding, and PSI (collectively, the "Count III Defendants") involve and affect Interstate commerce.

464.     The activities alleged in this Complaint had the direct effect of causing funds to be transferred from GEICO to pay Big City.

465.     The activities alleged in this Complaint additionally damaged GEICO by requiring it to expend resources in the investigation of the improper claims.

466.     As such, the Count III Defendants constitute an enterprise that is engaged in activities affecting interstate commerce.

467.     Moreover, the Count III Defendants have formed an association-in-fact enterprise with an ascertainable structure, based upon the relationships amongst the Defendants and the relatedness of the criminal activities (U.S. Mail/wire fraud) designed with the common purpose of defrauding insurance companies, like GEICO.

468.     Each of the Count III Defendants played a role in executing the affairs of the enterprise.

469.     The Count III Defendants conducted the affairs of this association-in-fact enterprise through a pattern of racketeering activity demonstrated in GEICO's Mail/wire fraud chart, attached as **Exhibit 25**.

470.     GEICO is in the business of writing insurance and paying legitimate claims throughout the United States.  Insurance fraud schemes practiced here, and elsewhere, adversely affect insurance rates across the country.  As such, they harm the public at large, and affect interstate commerce.

471.     GEICO is a "person" that has been injured in its business or property by reason of this conduct as defined by 18 U.S.C. § 1961(3).

472.     By virtue of the Defendants' violations of 18 U.S.C. § 1962(c), GEICO is entitled to recover from each of the Count III Defendants treble the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

**WHEREFORE**, GEICO demands judgment against the Defendants individually, and jointly and severally as follows:

a.     Actual and consequential damages to be established at trial;

b.     Treble damages, interest, costs and reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c);

- 66 -

      c.      Injunctive relief, pursuant to 18 U.S.C. § 1964(a), enjoining the Count III Defendants from engaging in further wrongful activities as alleged in the Complaint and requiring them to disclaim all bills and demands for payment issued to patients who reported that they were injured in a motor vehicle incident; and,

      d.      All other relief this Court deems just.

**COUNT IV: VIOLATIONS OF 18 U.S.C. § 1962(d)**
**(ASSOCIATION-IN-FACT ENTERPRISE CONSPIRACY)**
**(Against All Defendants)**

473.      GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

474.      Dr. Elias, Dr. Bratton, Big City, Ms. Davis, PS Funding, and PSI (the "Count IV Defendants") intentionally conspired with each other to further facilitate, support, and/or operate an association-in-fact enterprise.

475.      As such, the Count IV Defendants conspired to violate 18 U.S.C. § 1962(c).

476.      The purpose of the conspiracy was to obtain automobile insurance benefits from GEICO on behalf of Big City, even though Big City was not eligible to collect such benefits by virtue of its unlawful conduct.

477.      The Count IV Defendants were aware of this unlawful purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to GEICO of insurance claim documents containing material misrepresentations and/or material omissions, money laundering and state law crimes involving bribery as set forth above.

478.      GEICO has been injured in its business and property by reason of this conspiratorial conduct, whereas GEICO has been induced to make payment of PIP benefits and bodily injury claims as a result of the Count IV Defendants' unlawful conduct described herein.

479.      By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV Defendants are jointly and severally liable to GEICO, and GEICO is entitled to recover from each treble

damages sustained by reason of the claims submitted by, or on behalf of the Count IV Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorneys' fees.

**WHEREFORE**, GEICO demands judgment against the Count IV Defendants individually, jointly and severally as follows:

a.     Actual and consequential damages to be established at trial;

b.     Treble damages, interest, costs and reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c);

c.     Injunctive relief, pursuant to 18 U.S.C. § 1964(a), enjoining the Count IV Defendants from engaging in further wrongful activities as alleged in the Complaint and requiring them to disclaim all bills and demands for payment issued to patients who reported that they were injured in a motor vehicle incident; and,

d.     All other relief this Court deems just.

### COUNT V:  DECLARATORY RELIEF UNDER
### 28 U.S.C. § 2201 DECLARATORY JUDGMENT ACT
### (Against Big City, Dr. Elias, and Dr. Bratton)

480.     GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

481.     To be eligible to receive assigned PIP benefits, an assignee provider must comply with law.

482.     Dr. Elias, Dr. Bratton and Big City intentionally have made materially false statements to GEICO in insurance claims to improve the appearance of their claims.

483.     Dr. Elias, Dr. Bratton and Big City intentionally have submitted, or participated in the submission of, unreasonable demands for payment based on unnecessary chiropractic treatment.

484.     Dr. Elias, Dr. Bratton and Big City intentionally have mischaracterized assistance rendered by unqualified staff members employed by Big City as therapeutic exercise

for the purpose of deceptively billing GEICO for this service.

485.      Dr. Elias, Dr. Bratton and Big City intentionally have engaged in the overutilization of therapies that chiropractors only are allowed by law to prescribe as "supportive" of primary chiropractic treatment, in violation of the regulations applicable to the practice of chiropractic in the Commonwealth of Massachusetts.

486.      Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Dr. Elias, Dr. Bratton, and Big City acted as set forth above.

**WHEREFORE**, GEICO demands judgment against all defendants declaring that

    a.  GEICO is entitled to deny past, pending, and future insurance claims from Big City involving the patterns of conduct set forth above; and,

    b.  Defendants' conduct is wrongful and in violation of duties established by law.

### COUNT VI:  COMMON LAW FRAUD
### (Against Big City, Dr. Elias, and Dr. Bratton)

487.      GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

488.      Dr. Elias, Dr. Bratton, and Big City (the "Count VI defendants") intentionally made material misrepresentations to GEICO in connection with demands for payment.

489.      The Count VI defendants' intentional misrepresentations include, but are not limited to, the following:  (a) creating and submitting false and fraudulent insurance claims; (b) participating in and/or causing the preparation and submission of fraudulent medical records, treatment notes and medical invoices regarding treatment that was never performed, not warranted and/or falsely documented; and, (c) intentionally misrepresenting the qualifications of persons involved in administrating the physical therapy and medical services to patients.

490.     The Count VI defendants' representations are intentionally false, or intentionally omitted additional facts necessary to render the information furnished not misleading.  The misrepresentations were intentionally made by the defendants in furtherance of their scheme to defraud GEICO by submitting non-compensable claims to GEICO for payment of first party insurance benefits under Massachusetts law.

491.     The foregoing misrepresentations were known by the Count VI defendants to be false, and were made for the express purpose of inducing GEICO to make payments for claims that were not compensable under Massachusetts law.

492.     GEICO reasonably relied upon such material misrepresentations to its detriment in paying and investigating numerous, unreasonable, unnecessary, inappropriate, non-meritorious bills for medical expenses pursuant to PIP bodily injury claims.

493.     As a direct and proximate result of the Count VI defendants' fraudulent representations and acts, GEICO has been damaged as previously described herein.

**WHEREFORE**, GEICO respectfully requests that this Honorable Court award:

    a.    Damages in an amount to be determined at trial representing the whole of GEICO's actual, consequential, and incidental damages, loss, detriment, and expense caused or occasioned by the actions of the Count VI defendants;

    b.    Costs, interest and attorneys' fees; and,

    c.    Any additional relief this Court deems just.

## COUNT VII:  CIVIL CONSPIRACY
### (Against All Defendants)

494.     GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

495.     The defendants did intentionally agree, combine, confederate, contrive, and conspire with one another to assist Big City in defrauding GEICO.

496.     By joining in this conspiracy to defraud, the defendants were collectively able to negate the safeguards that would have prevented any one person acting alone, from accomplishing a fraud of this type and on this scale.

497.     As a consequence of the aforesaid conspiracy, GEICO was induced to and did pay numerous fraudulent and non-compensable medical claims.

**WHEREFORE**, GEICO respectfully requests that this Honorable Court award:

   a.   Damages in an amount to be determined at trial representing the whole of GEICO's actual, consequential, and incidental damages, loss, detriment, and expense caused or occasioned by the actions of the defendants;

   b.   Costs, interest and attorneys' fees; and,

   c.   Any additional relief this Court deems just.

## COUNT VIII:  MONEY HAD AND RECEIVED
### (Against Big City)

498.     GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

499.     Big City's intentional retention of amounts paid by GEICO is wrongful because these monies were obtained as the direct result of the defendants' violation of duties.

500.     GEICO has been harmed by Big City's intentional acts of wrongfully obtaining and retaining these benefits because GEICO would not have paid Big City's bills if it had known at the time it paid these claims that defendants' acts were wrongful and illegal.

501.     Big City's intentional retention of these benefits violates fundamental principles of contract, justice, equity, and good conscience.

502.     Additionally, Big City's intentional retention of the excess amounts received from GEICO due to defendants' fraudulent treatment and billing practices, is wrongful.

503.     Big City intentionally has been unjustly enriched, and to allow Big City to retain these amounts would violate fundamental principles of justice, fairness, equity, and good conscience.

**WHEREFORE**, GEICO respectfully requests that this Honorable Court award:

  a.     Damages in an amount to be determined at trial representing the whole of GEICO's actual, consequential, and incidental damages, loss, detriment, and expense caused or occasioned by the actions of Big City;

  b.     Costs and interest; and,

  c.     Any additional relief this Court deems just.

### COUNT IX:  VIOLATIONS OF MASSACHUSETTS GENERAL LAWS CHAPTER 93A
### (Against All Defendants)

504.     GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

505.     Section 2(a) of the Massachusetts Consumer Protection Act, Massachusetts General Laws chapter 93A, provides, that "unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

506.     At all times relevant hereto, defendants were engaged in trade or commerce within the Commonwealth of Massachusetts.

507.     The conduct alleged throughout this Complaint was all intentional and had a center of gravity in the Commonwealth of Massachusetts, where the Big City clinic is located.

508.     The acts and omissions of defendants, in furtherance of their scheme to defraud GEICO including, but not limited to, the conduct alleged above, constitute intentionally unfair and deceptive business practices in trade or commerce, as prescribed by Massachusetts General Laws chapter 93A, sections 2 and 11, and those regulations promulgated by the Office of the Attorney General for the Commonwealth of Massachusetts pursuant thereto.

Pursuant to 940 Code of Massachusetts Regulations, section 3.16:

[A]n act or practice is a violation of Massachusetts General Laws chapter 93A, section 2 if:

*(3)     It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection.*

509.     Defendants intentionally committed one or more *per se* violations of Massachusetts General Laws chapter 93A, sections 2 and 11, by violating provisions of the Massachusetts "Runner" Statute (Mass. Gen. Laws ch. 266, section 111C), the Massachusetts's PIP Statute (Mass. Gen. Laws ch. 90, section 34M), the Massachusetts Public Health Statute (Mass. Gen. Laws ch. 111) and Massachusetts Regulations pertaining to the practice of physical therapy, which are codified in 233 Code of Massachusetts Regulations, sections 4.00-5.00.

510.     Big City, Dr. Elias, and Dr. Bratton engaged in intentionally misleading conduct, and intentionally omitted information necessary for their statements not to be misleading.

511.     Dr. Bratton intentionally allowed unqualified persons to render gym exercise to her patients under the guise of chiropractic treatment.

512.     Dr. Bratton intentionally prescribed treatment of uniform duration and frequency regardless of the true needs, if any, of the patient.

513.     Dr. Elias intentionally directed Dr. Bratton to engage unfair and deceptive conduct.

514.     Dr. Elias intentionally used Ms. Davis and PS Funding to funnel payments to patients to procure patients for the purpose of defrauding insurers like GEICO.

- 73 -

515.     Ms. Davis, PS Funding, and PSI intentionally acted as instrumentalities of Big City to instill a false sense of regularity in improper payments to patients, improper unlicensed legal assistance, and improper contact with attorneys seeking to represent patients in making insurance and tort claims.

516.     The defendants' intentionally unlawful conduct forced GEICO to incur attorneys' fees.  Such fees constitute a loss of money or property, and are recoverable pursuant to Massachusetts General Laws chapter 93A.

517.     As a result of the above-described deceptive business practices, GEICO sustained injury and economic damages including, but not limited to:

   a.     All monies paid to defendants, in reliance on false physical therapy bills;

   b.     The cost of investigating the underlying PIP claims; and,

   c.     The costs incurred in connection with this action (including all attorneys' fees, and costs).

518.     The defendants' actions described herein were performed intentionally.  Accordingly, GEICO is entitled to treble damages, costs and attorneys' fees.

**WHEREFORE**, GEICO demands judgment against the defendants individually, and jointly and severally as follows:

   a.     Actual and consequential damages to be established at trial;

   b.     Treble damages, interest, costs and reasonable attorneys' fees;

   c.     Injunctive relief enjoining the defendants from engaging in the wrongful activities alleged in the Complaint and requiring them to disclaim all bills and demands for payment issued to patients who reported that they were injured in a motor vehicle incident;

   d.     Costs and interest; and,

   e.     Any other relief this Court deems just.

## COUNT X:  INTENTIONAL INTERFERENCE WITH
## ADVANTAGEOUS BUSINESS RELATIONSHIPS
### (Against All Defendants)

519.    GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

520.    The defendants intentionally interfered with the advantageous business relationships of GEICO, thereby causing it to suffer direct monetary losses and actual damages.

521.    More specifically:

    a.    At all times material to this Complaint, GEICO enjoyed advantageous business relationships with its insureds;

    b.    The defendants had knowledge of these advantageous business relationships;

    c.    The defendants intentionally interfered with the above-referenced advantageous business relationships;

    d.    GEICO suffered a loss of business advantage as a direct result of the defendants' conduct; and,

    e.    The defendants' interferences with GEICO's advantageous business relationships will likely continue in the future.

**WHEREFORE**, GEICO demands judgment against the defendants individually, and jointly and severally as follows:

    a.    Actual and consequential damages to be established at trial;

    b.    Costs and interest;

    c.    Injunctive relief enjoining the defendants from engaging in the wrongful activities alleged in the Complaint and requiring them to disclaim all bills and demands for payment issued to patients who reported that they were injured in a motor vehicle incident; and,

    d.    Any other relief this Court deems just.

## COUNT XI: INJUNCTION GEN. L. C. 221, § 44A
### (Against Big City, Dr. Elias, and Dr. Bratton)

522.     GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

523.     Dr. Elias, Dr. Bratton, and staff of Big City are forbidden by Massachusetts General Laws chapter 221, section 44A from "communicat[ing], directly or indirectly, with any attorney at law, or any person representing such attorney, for the purpose of enabling such attorney, or any associate or employee of such attorney, to solicit employment to present a claim for damages or prosecute an action for the enforcement thereof, on behalf of any patient in any such institution. . . ."

524.     Big City staff and/or Dr. Bratton and/or Dr. Elias intentionally have communicated with Ms. Davis for the purpose of enabling patients to become represented by one or more personal injury attorneys for the purposes of presenting claims for damages on behalf of patients of Big City.

525.     Ms. Davis represents one or more attorneys who present claims for damages on behalf of injured persons.

526.     The intentionally improper communications of Big City staff and/or Dr. Elias and/or Dr. Bratton violate Massachusetts General Laws chapter 221, section 44A.

**WHEREFORE**, GEICO demands judgment against Dr. Bratton, Dr. Elias, and Big City individually, and jointly and severally as follows:

        a.  Injunctive relief enjoining Big City, Dr. Bratton, and Dr. Elias from communicating with Ms. Davis for purposes of securing employment for personal injury attorneys desirous of presenting claims for damages on behalf of Big City patients; and,

        b.  Any other relief this Court deems just.

## COUNT XII:  INJUNCTION MASS. GEN. L. C. 221, § 43
### (Against Ms. Davis, PS Funding, and PSI)

527.     GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

528.     Ms. Davis, PS Funding, and PSI intentionally solicit individuals to employ one or more attorneys desirous of presenting claims for damages from motor vehicle accidents.

529.     Ms. Davis, PS Funding, and PSI, despite acting on behalf of one or more attorneys, intentionally advertise money or other personal advantage should they employ Ms. Davis.

530.     Ms. Davis has been employed by one or more attorneys.

531.     One or more attorneys rely on Ms. Davis, PS Funding, and PSI to procure new clients, whom they claim as clients simply after meeting with Ms. Davis.

532.     Attorneys are prohibited by Massachusetts General Laws chapter 221, section 43, from acting "through any runner, agent or person, hereinafter called a runner, who is employed by him" to "solicit a person to employ him" or to "solicit a person to employ such attorney, to present a claim for damages. . . ."

533.     Furthermore, attorneys and runners, as defined above, are prohibited by Massachusetts General Laws chapter 221, section 43, from "directly or indirectly giv[ing] or promis[ing] any person any money. . . or other personal advantage in consideration of his employing such attorney on behalf of a person having a claim for damages" and are prohibited from "soliciting or procuring the person who has such claim to employ such attorney to present such claim. . . ."

534.     Ms. Davis, PS Funding, and PSI, intentionally have engaged in conduct that is in violation of Massachusetts General Laws chapter 221, section 43.

- 77 -

535.     Massachusetts General Laws chapter 221, section 43 authorizes an injunction against a "runner" who violates the provision of law.

**WHEREFORE**, GEICO demands judgment against Ms. Davis, PS Funding, and PSI individually, and jointly and severally as follows:

      a.  Injunctive relief enjoining Ms. Davis, PS Funding, and PSI from soliciting employment for attorneys, and enjoining Ms. Davis, PS Funding, and PSI from advertising the availability of "cash" or other benefit for employing Ms. Davis or attorneys with whom she works; and,

      b.  Any other relief this Court deems just.

## IX.     DAMAGES

536.     As of the date of this Complaint, the defendants have submitted $**517,280** in billing invoices to GEICO.

537.     GEICO has paid at least **$46,775** in connection with invoices submitted by the defendants (*See* **Exhibit 2B**, GEICO's Damages Chart, incorporated herein in its entirety).

538.     GEICO has incurred costs valued as at least **$62,992**, in connection with its investigation of the invoices submitted by the defendants (*See* **Exhibit 2C**, GEICO's Damages Chart, incorporated herein in its entirety).

539.     As a consequence of the defendants' pattern of fraudulent conduct, GEICO suffered damages, which include, but are not limited to, the monies detailed in the GEICO Damages Charts, which is attached hereto as **Exhibit 2B and 2C**, and is fully incorporated herein.  The full extent of GEICO's damages can only be ascertained through discovery.

540.     As the defendants' pattern of fraudulent conduct is ongoing, GEICO's damages are increasing with each day that the enterprise continues to operate its schemes. GEICO believes its true damages are significant and will exceed the amounts listed in the Damages Charts attached hereto as **Exhibit 2B and 2C**, incorporated herein in its entirety.

GEICO's Damages Charts memorializes the claim number, date of loss, initials of named insured, initials of claimant, amount billed, and the amount paid.  (*See* **Exhibit 2B and C**, incorporated herein in its entirety).

### X.     JURY DEMAND

GEICO DEMANDS TRIAL BY JURY ON ALL COUNTS IN THIS COMPLAINT.

Respectfully submitted,

GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO GENERAL INSURANCE COMPANY, AND GEICO INDEMNITY COMPANY,

By its attorneys,


___*/s/ David O. Brink*_____
David O. Brink, BBO #547370
   *dbrink@smithbrink.com*
Douglas D. McInnis, BBO#672935
   *dmcinnis@smithbrink.com*
Lynn G. McCarthy, BBO #552150
   *lmccarthy@smithbrink.com*
Douglas R. Tillberg, BBO#661573
   *dtillberg@smithbrink.com*
SMITH & BRINK, P.C.
350 Granite Street, Suite 2303
Braintree, MA 02184
Phone 617-770-2214
Dated:                                          Fax 617-774-1714