UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE  COMPANY, GEICO GENERAL INSURANCE COMPANY and GEICO INDEMNITY COMPANY,<br><br>        Plaintiffs,<br><br>        vs.<br><br>BIG CITY CHIROPRACTIC & SPORTS INJURY, INC., BRIAN ELIAS, D.C., MEGAN BRATTON, D.C., KAREN DAVIS, PROFESSIONAL SOLUTIONS INC., and PS FUNDING, LLC,<br><br>        Defendants. | Civil Action No.: 1:15-cv-13504-MLW |

**PLAINTIFFS' (GEICO'S) MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS COUNTERCLAIMS OF BIG CITY,
DR. ELIAS, AND DR. BRATTON (DKTS. 45, 46, 47)**

## I.    INTRODUCTION

On October 5, 2015, the plaintiffs, collectively "GEICO,"[1] pleaded a complaint against defendants Big City Chiropractic & Sports Injury, Inc. ("Big City"), Brian Elias, D.C. ("Dr. Elias"), and Megan Bratton, D.C. ("Dr. Bratton"), alleging the defendants are executing a fraudulent and abusive insurance billing scheme.  (Dkt. No. 1).  In response, those defendants filed vague counterclaims purportedly for fraud, deceit, and state law torts, based on GEICO's exercise of contractual rights and commencement of this lawsuit.  (Dkt. Nos. 45, 46 and 47). GEICO's pleas to the Court are privileged, and it is entitled to exercise its contractual rights.  For those reasons, and others explained more fully below, defendants fail to state a claim on which relief can be granted.  The counterclaims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] Government Employees Ins. Co., GEICO General Ins. Co., and GEICO Indemnity Co.

## II.     STANDARD OF REVIEW

A counterclaim must be dismissed if it fails to "'plausibly suggest[ ]' that the [claimant] is entitled to relief," meaning that the claimant failed to allege facts that, if proved, would establish "more than a sheer possibility that a[n] [opposing party] has acted unlawfully." Spinal Imaging Inc. v. State Farm Mut. Auto. Ins. Co., U.S. Dist. Ct., D. Mass. No. 12-11498-RWZ, 2013 U.S. Dist. LEXIS 58789, *4-*5 (Apr. 24, 2013), quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  The Court casts aside "threadbare recitals of a cause of action's elements," as well as conclusory statements.  Iqbal, 556 U.S. at 663.[2]  "[F]actual allegations that are 'merely consistent with' liability do not suffice. . . ."  Spinal Imaging Inc., supra, quoting Twombly, 550 U.S. at 557.

"The court may supplement the facts contained in the pleadings by reviewing documents fairly incorporated therein and facts susceptible to judicial notice." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007).[3]  That may include documents that the counterclaims "expressly link[ ] to," and on which counterclaims "admittedly" are "dependent." Id., quoting Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).  The Court also may review court papers in related civil actions.  E.I. Du Pont de Nemours & Co., Inc. v. Cullen, 791 F.2d 5, 7 (1st Cir. 1986); F.R.E. 201(b).

In this matter, the counterclaims link to, and are dependent on, GEICO's complaint, as well as Big City's own six civil actions in the Boston Municipal Court ("BMC").  GEICO's complaint is filed as Docket No. 1.  BMC court papers, including joint motions to stay filed in

---

[2] A counterclaim must do more than "tender[ ] 'naked assertions' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

[3] Quoting  R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).

each BMC matter, are filed herewith as **Exhibits 2 through 7**. Furthermore, the counterclaims refer to, and are dependent on, GEICO's standard Massachusetts automobile insurance policy. The policy is filed as Docket No. 1-2, and is **Exhibit 1** to this memorandum.[4]

### III. BACKGROUND

On October 5, 2015, GEICO filed its complaint in this matter. (Dkt. No. 1). GEICO named six defendants, including Big City, Dr. Elias, and Dr. Bratton.[5] GEICO asserted that defendants were liable for insurance fraud and abuse, and it sought recovery of damages, declaratory judgment, and injunctive relief. (Id. at ¶¶ 1-10). GEICO invoked, among other things, the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961, *et seq.*, the Massachusetts Consumer Protection Statute, M.G.L. c. 93A, Massachusetts General Laws chapter 221, sections 43 and 44A concerning improper solicitation, the Declaratory Judgment Act, 28 U.S.C., § 2201, and common law. (See id.).

In short, GEICO alleged that Dr. Elias initiated a scheme by which Dr. Bratton, a new chiropractor, would unlawfully over-utilize a recipe of therapies "supportive" of chiropractic manipulation, which defendants improperly billed to GEICO. (Id. at ¶¶ 4-5). Dr. Elias caused Dr. Bratton to be trained in the recipe, and to delegate the purported rendering of those services by unqualified and unlicensed individuals hired by Big City managers. (Id. at ¶¶ 112-117). The result was that many services were physically attended by unqualified persons such as drivers. (Id. at ¶¶ 151-156). Big City falsely billed GEICO as though *Dr. Bratton* had certified the

---

[4] The counterclaims do not clearly rely on the Boston Globe publication referenced in the counterclaims of co-defendant Karen Davis (Dkt. Nos. 38, 39, and 40). That article was filed by GEICO as an exhibit to its memorandum for dismissal of those counterclaims. (Dkt. No. 50-1).

[5] GEICO also named as defendant a freelance "paralegal," and her two companies, which act as liaison between Big City and one or more personal injury attorneys, advertising cash payments to individuals who will treat at Big City and receiving investment and cross-referrals in return from Dr. Elias. (See Dkt. No. 1).

services *as her own*, and Dr. Bratton deceptively represented in a blizzard of paper submitted with each claim that the services were rendered by "therapists." (Id. at ¶¶ 132-133, 144-145). Big City and Dr. Elias issued inflated invoices for assistance by the *faux* therapists at a rate of $280 to $380 per hour. (Id. at ¶¶ 204-205).

GEICO's allegations were based in part on the sworn statements of insurance claimants. (Dkt. No. 1-6). GEICO has a contractual right to request, and each claimant has a duty to submit to, an examination under oath. (**Exhibit 1** at 23).[6] See Lorenzo-Martinez v. Safety Ins. Co., 58 Mass. App. Ct. 359, 364 (2003) ("[F]ailure to submit to an examination under oath constitutes a breach of the standard automobile insurance contract. . . ."). The PIP statute likewise imposes a broad duty to "do all things necessary to enable the insurer to obtain . . . needed information to assist in determining the amounts due." G. L. c. 90, § 34M.[7]

On November 19, 2015, Big City, Dr. Elias, and Dr. Bratton each filed mirror-image counterclaims in this matter. (Dkt. Nos. 45, 46, and 47). The allegations were, in summary, as follows: Big City provides chiropractic services. (Id. at ¶¶ 3, 4). Its services are "quality;" "at all times" those services "complied with all applicable laws and regulations" (id. at ¶ 12); they were "necessary" (id. at ¶ 13); and, Dr. Elias never instructed anyone to "overbill" (id. at ¶ 13).

---

[6] Specifically, GEICO's policy of insurance provides as follows:

**Fourth, Cooperate With Us**

After an accident or loss, you or anyone else covered under this policy must cooperate with us in the investigation, settlement and defense of any claim . . . .

We may also require you and any person seeking payment under any part of this policy to submit to an examination under oath at a place designated by us, within a reasonable time after we are notified of the claim.

(**Exhibit 1** at 23).

[7] Cooperation enables the insurer to "possess itself of all knowledge" about the material facts "to enable [it] to decide upon [its] obligations. . . ." Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 94-95 (1884).

Big City invoices insurers like GEICO directly "pursuant to the Personal Injury Protection provisions of the respective automobile insurance policies." (Id. at ¶ 5). In making that last allegation, defendants incorporated GEICO's insurance policy, which is filed here as **Exhibit 1**.

Defendants further claim that "[b]eginning in 2014, GEICO began a pattern of denying all [direct-billed] claims submitted by Big City." (Id. at ¶ 6). Defendants allege that GEICO "began to seek examinations under oath" at a rate higher than facilities outside Massachusetts. (Id. at ¶¶ 7, 9). In response to the denials, Big City began suing GEICO in the BMC. (Id. at ¶ 10). As noted above, the Court may take notice of the papers in the BMC civil actions. (**Exhibits 2 through 7**). The BMC civil actions were served October 22, 2015, weeks after GEICO's complaint here, and on November 24, the parties jointly moved to stay the BMC actions. (Id.).

In the counterclaims here, defendants allege that GEICO filed its complaint as "retaliation" for the BMC suits. (Docket Nos. 45, 46, and 47 at ¶¶ 10, 11). According to defendants, GEICO's subjective purpose for bringing the civil action was "to interrupt, interfere [with] and terminate the ongoing business of Big City. . . ." (Id. at ¶¶ 11, 14). Furthermore, GEICO allegedly "wrongfully conspired" with other insurers "to engage in a similar pattern of denying claims submitted by GEICO [sic]." (Id. at ¶ 15). From that body of allegations, defendants purport to frame five theories of action.

First, Big City and Dr. Elias attempt to frame a RICO Act counterclaim based on a purported pattern of "indictable offenses in accordance with 18 U.S.C. § 1341."[8] (Dkt. Nos. 45 and 46 at ¶ 21). Dr. Bratton declined to join in this particular counterclaim. (See Dkt. No. 47).

---

[8] Defendants alleged that GEICO is an enterprise that affects interstate commerce. (Id. at ¶¶ 16-17). They allege that "in the course of [GEICO's] conspiracy and scheme to wrongfully interfere with the business of Big City . . . GEICO has used the United States Mail." (Id. at ¶ 18).

Big City and Dr. Elias allege with reference to the United States Code that GEICO committed mail fraud by "deny[ing]" their insurance claims, and by the "use [of] examinations under oath for fraudulent purposes. . . ." (Dkt. Nos. 45, 46 at ¶ 22). Big City and Dr. Elias provide no details supporting the counterclaims.

In Counterclaim Two (and the first counterclaim by Dr. Bratton), defendants allege that GEICO engaged in an unfair or deceptive act or practice by perpetrating the "scheme" alleged earlier in the counterclaims. (Id. at ¶ 25; Dkt. No. 47 at ¶ 17). Defendants appear to be referring to an earlier allegation that GEICO denied meritorious insurance claims and made extensive requests for examinations under oath. (Dkt. Nos. 45 and 46 at ¶¶ 21-22; Dkt. No. 47 at ¶¶ 9-15). Here also, defendants provide no detail.

In Counterclaim Three (Two by Dr. Bratton), defendants allege that GEICO "intentionally and deliberately interfered" with economic relations "with patients." (Dkt. Nos. 45 and 46 at ¶ 28; Dkt. No. 47 at ¶ 20). Defendants fail to plausibly suggest a motive, or improper reason why GEICO's interests would be served by intentional interference. Defendants also fail to allege what, if anything, patients did in response to the so-called interference. The patients are not described in any way. Defendants provide no detail.

In Counterclaim Four (Three by Dr. Bratton), defendants allege that GEICO abused the process of this Court by "initiating the instant action, not to recover any payments, but in furtherance of its scheme to prohibit [defendants] from submitting any further claims for payment."[9] (Dkt. Nos. 45 and 46 at ¶ 31; Dkt. No. 47 at ¶ 23).

---

[9] The allegation echoes the request for relief in GEICO's complaint, which "demands judgment . . . declaring that . . . GEICO is entitled to deny past, pending, and future insurance claims from Big City involving the patterns of conduct" alleged in the complaint. (Dkt. No. 1 at ¶ 486).

Finally, in Counterclaim Five (Four by Dr. Bratton), defendants allege that GEICO "has published, or otherwise disseminated information by which it has wrongfully stated that [defendants] have committed fraud in the submission of claims." (Dkt. Nos. 45 and 46 at ¶ 34; Dkt. No. 47 at ¶ 26). The only supportive factual allegation in the counterclaims explains that GEICO did so when it "brought the instant action," which the Court may take notice indeed alleges fraud in the submission of insurance claims. (Dkt. Nos. 1 at ¶ 2; 45, 46 and 47 at ¶ 14; see id. at ¶ 11). Defendants fail to plausibly suggest that GEICO made any disparaging statement in any other context.

GEICO now moves to dismiss the counterclaims of Big City, Dr. Elias, and Dr. Bratton.

### IV.   ARGUMENT

The Court should dismiss the counterclaims of Big City, Dr. Elias, and Dr. Bratton for failure to state a claim on which relief may be granted. First, the RICO Act counterclaims, which are based on a theory of mail fraud, are not pleaded with particularity. Defendants failed to identify any false or deceptive statements used by GEICO to extract anything from defendants. Second, the allegations of improper motive in filing this civil action simply do not support a claim for abuse of process. Third, the statements in GEICO's fraud complaint to this Court are absolutely privileged, and so the "disparagement" counterclaims based on those statements must be dismissed. Fourth, the counterclaims for tortious interference and unfair or deceptive practices rest on insufficient foundations in that (i) allegedly *incorrect* denials of insurance claims, alone, do not give rise to a cause of action under General Laws chapter 93A; (ii) mere matters of contract rights do not provide a sufficient foundation for a claim of interference by "improper means," and defendants likewise fail to plausibly suggest any improper motive beneficial to GEICO; and, (iii) defendants impermissibly fail even to identify

what claims and patients are the focus of the counterclaims. The counterclaims should be dismissed for failure to state a claim on which relief may be granted.

### A.      DEFENDANTS FAIL TO PLAUSIBLY SUGGEST THAT GEICO COMMITTED PATTERN OF MAIL FRAUD.

Big City and Dr. Elias fail to plausibly suggest that GEICO committed a pattern of mail fraud. The counterclaims are devoid of factual claims detailing any scheme to deceive or trick defendants. Counterclaim One fails to state a claim on which relief may be granted.

A party seeking to allege a pattern of mail fraud actionable under the RICO Act must plausibly suggest that the responding party schemed to "defraud, or . . . obtain[ ] money or property by means of false or fraudulent pretenses, representations, or promises. . . ." 18 U.S.C. § 1341. While a broad range of activities potentially are captured within this definition, "Congress did not strip the word 'defraud' of all its meaning . . . ; the word still signifies 'the deprivation of something of value by trick, deceit, chicane, or overreaching.'" United States v. Pendergraft, 297 F.3d 1198, 1208-09 (11th Cir. 2002), quoting Hammerschmidt v. United States, 265 U.S. 182, 188 (1924). Alleged schemes not based on deceit, are insufficient. See Hammerschmidt, 265 U.S. at 188 (robbery is not mail fraud). Furthermore, a cause will not lie in favor of a plaintiff that already knew the truth that the scheme allegedly sought to distort. Pendergraft, 297 F.3d at 1209. For example, a party cannot state a claim from conduct that allegedly was calculated to deceive the claimant about the claimant's own actions. Id., citing Pelletier v. Zweifel, 921 F.2d 1465, 1499 (11th Cir. 1991) (requiring that defendant must "believe that his intended 'victim' will act on his deception"); Norton v. United States, 92 F.2d 753, 755 (9th Cir. 1937) ("There can be no intent to deceive where it is known to the party making the representations that no deception can result.").

Furthermore, defendants must plausibly suggest the existence of such a scheme by pleading facts with *particularity*. Fed. R. Civ. P. 9(b). The allegations must include "specification of the time, place and content of an alleged false representation." Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985), quoting McGinty v. Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir. 1980). It "is not enough to salt the complaint with the words 'falsely' and 'fraudulently.'" Curtis v. Duffy, 742 F. Supp. 34, 38 (D. Mass. 1990).

The counterclaims here lack the necessary elements and detail. Defendants cannot rely on threadbare and incendiary conclusions that GEICO "use[d] examinations under oath for fraudulent purposes" and "us[ed] the mail to deny all claims." (See Dkt. No. 45 and 46 at ¶ 22). A comparison with GEICO's own RICO Act claims, is illustrative: whereas GEICO provided 540 detailed paragraphs and twenty-four exhibits setting forth extensive factual specificity and support for its claims, defendants provide just thirty-five conclusory paragraphs with no detail whatever, for counterclaims that apparently aspire to have similar scope. (Compare Dkt. No. 1, with Dkt. Nos. 45 and 46). The counterclaims are insufficient to put GEICO on reasonable notice of the purported scheme to trick or deceive, much less the time, place, and content of the acts making up that scheme.

In this respect, the decision of the United States District Court for the Eastern District of Pennsylvania in McBride v. Hartford Life & Accident Ins. Co., is instructive. See C.A. No. 05-6172, 2006 U.S. Dist. LEXIS 4278, *8 (Feb. 3, 2006). In McBride, an insurance claimant unsuccessfully attempted to sue her insurer, alleging the insurer was liable under the RICO Act for sending "letters that fraudulently refused to pay the . . . benefits due. . . ." Id. The Court dismissed the count because, among other things, the complaint was devoid "of any allegations of an agreement or conspiracy to violate [the RICO Act] . . . or even mail fraud." McBride, 2006

U.S. Dist. LEXIS 4278, *11.  Likewise, in the matter of <u>Curtis v. Duffy</u>, 742 F. Supp. 34, 39 (D. Mass. 1990), Judge Skinner dismissed a RICO Act complaint whose central feature was an "unsupported allegation that the defendants' conduct [on behalf of an insurer] was part of a general scheme by the insurance industry to subvert a statutory system for the insurance of automobile liability," by (among other things) denying insurance claims.  <u>Id.</u>  The Court concluded that the complaint in the <u>Curtis</u> matter "fail[ed] to state a claim for violation of RICO. . . ."  See <u>id.</u> (also scheduling Rule 11 hearing).

Here, as in <u>McBride</u> and <u>Curtis</u>, defendants fail to plausibly suggest that an insurer violated the RICO Act by, among other things, denying insurance claims.  Counterclaim One by Big City and Dr. Elias should be dismissed for failure to state a claim on which relief may be granted.

**B.   GEICO DID NOT ABUSE COURT'S PROCESS BY INSTITUTING CIVIL ACTION.**

GEICO has a right to maintain this civil action.  The malicious prosecution counterclaims that defendants mislabel as being for abuse of process, are premature (at best) because GEICO's civil action has not terminated in defendants' favor.  <u>Billings v. Commerce Ins. Co.</u>, 458 Mass. 194, 197 (2010).  The litigation is ongoing.  Counterclaim Four by Big City and Dr. Elias, and Counterclaim Three by Dr. Bratton, fail to state a claim on which relief may be granted.

A critical element of the tort of abuse of process is misuse of *process*, meaning "causing papers to issue by a court 'to bring a party or property within its jurisdiction.'"  <u>Jones v. Brockton Pub. Mkts., Inc.</u>, 369 Mass. 387, 390 (1975).  Mere allegations of "wrongful bringing of an action" ordinarily will not support an action for abuse of process.  <u>Gabriel v. Borowy</u>, 324 Mass. 231, 236-37 (1949).  Courts simply do not invite wasteful derivative litigation, especially

claims of such dubious pedigree.[10] See, e.g., Rosemont Ents., Inc. v. Random House, Inc., 261 F. Supp. 691, 695 (S.D.N.Y. 1966) ("no claim [for abuse of process] lies for the commencement of the action, notwithstanding it may have been maliciously or vindictively motivated"); Surgidev Corp. v. Eye Tech., Inc., 625 F.Supp. 800, 805-06 & n.4 (D. Minn. 1986) (dismissing claim for abuse of process and observing that other courts hold that mere initiation of a civil action "standing alone, is . . . insufficient"). To sustain such a cause, a party must plausibly suggest coercive *misuse* of the summons, for example, using it to disqualify a participant, such as an attorney, in a related litigation. See Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010) (abuse of summons to disqualify attorney in related civil action).

Here, defendants fail to plausibly suggest that GEICO abused the Court's summonses. In the Gabriel decision cited above, the Supreme Judicial Court ("SJC") held that a failure of a claimant to "mention . . . the issuance or use of any process, much less [allege] that any wrong was committed in connection with any process," necessitated dismissal of the claim. 324 Mass. at 236. "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Cohen v. Hurley, 20 Mass. App. Ct. 439, 442 (1985), quoting Prosser & Keeton, Torts § 121, at 898 (1984); see Restatement (Second) of Torts, § 682, Reporters' Notes (same, even when process allegedly was procured for a "spite motive"), citing numerous decisions. Obtaining the appearance of a defendant is the very purpose for which the summonses were "designed and intended," and deploying the summons for that purpose, as a matter of law, is not abusive. See Quaranto v. Silverman, 345 Mass. 423, 426, 187 (1963), quoting Gabriel, 324 Mass. at 236.

---

[10] Massachusetts courts have ruled abuse of process claims "ought not to be encouraged" because they "tend to suppress the airing of legitimate grievances." Cohen v. Hurley, 20 Mass. App. Ct. 439, 443 (1985), quoting Wingersky v. E.E. Gray Co., 254 Mass. 198, 201 (1926).

Counterclaim Four is so lacking in the elements of abuse of process, it sounds more in the nature of an unripe claim for malicious prosecution. Under that label, the counterclaim fails as well for the elementary reason that "[s]uccessful termination of the underlying action is a 'threshold requirement.'" Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999), quoting Cole v. Pulley, 18 Mass. App. Ct. 950, 951 (1984); see Billings, 458 Mass. at 197 (underlying action must already have "terminated" in the claimant's favor). "A contrary rule would spawn a type of litigation said to be 'looked [upon] with unapproving eye.'" Cole, 18 Mass. App. Ct. at 951, quoting Della Jacova v. Widett, 355 Mass. 266, 272 (1969).

GEICO has a right to prosecute its civil action, which has not terminated at all, much less in the favor of the defendants. Defendants fail to state a claim for abuse of process. Counterclaim Four by Big City and Dr. Elias, and Counterclaim Three by Dr. Bratton, should be dismissed for failure to state a claim.

### C. GEICO'S COMPLAINT IS ABSOLUTELY PRIVILEGED, AND THE COUNTERCLAIMS FOR DISPARAGEMENT ARE BARRED.

The counterclaims asserted by each defendant for "disparagement" are barred by the litigation privilege. The counterclaims are devoid of any plausible suggestion that GEICO disparaged defendants (by alleging they engaged in fraud) other than by pleading the complaint in this civil action. (See Dkt. Nos. 45 and 46 at ¶¶ 11, 14, 34; Dkt. No. 47 at ¶¶ 11, 14, 26). GEICO's pleas are absolutely privileged, and for that reason, defendants fail to state a claim on which relief may be granted.

It is settled law that "statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding." Loltek-Jick v. O'Toole, Suffolk Super. Ct. C.A. 2009-2915-C, 2011 Mass. Super. LEXIS 320, *7-*8 (Dec. 15, 2011) (quoting Sriberg v. Raymond, 370 Mass. 105,

108 (1976)); see Tomaselli v. Beaulieu, U.S. Dist. Ct., D. Mass. C.A. No. 08-10666-PBS, 2010 U.S. Dist. LEXIS 42612, *30 (Mar. 10, 2010) (Dein, M.J.) (dismissing claims on basis of litigation privilege),[11] citing Frazier v. Bailey, 957 F.2d 920, 932 (1st Cir. 1992). "The litigation privilege is not limited to defamation cases." Pegasystems, Inc. v. Manning, Middlesex Super. Ct. C.A. 2014-00973, 2014 Mass. Super. LEXIS 128, *4 (Aug. 15, 2014). The privilege is "an absolute defense to all [ ] claims for relief," with respect to all claims "arising out of the conduct of the parties and/or witnesses in connection with a judicial proceeding." O'Toole, supra at *9, quoting Sullivan v. Birmingham, 11 Mass. App. Ct. 359, 367-68 (1981). Allegations concerning state of mind are immaterial; the privilege applies irrespective of such allegations. Pegasystems, supra at *5-*6, quoting Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 140 (1996), and Giuffrida v. High Country Investors, Inc., 73 Mass. App. Ct. 225, 242 (2008). The litigation privilege extends to all theories of liability, and "[t]o rule otherwise would make [the privilege] valueless. . . ." Williams v. Mass. College of Pharm. & Allied Health Scis., U.S. Dist. Ct., D. Mass. No. 12-10313-DJC, 2013 U.S. Dist. LEXIS 46886, *18-*19 (Mar. 31, 2013), quoting Doe, 41 Mass. App. Ct. at 140.

To plead a counterclaim for disparagement, a claimant must plausibly suggest that a respondent "published a false statement to a person other than the plaintiff."[12] Advanced Tech. Corp. v. Instron, Inc., 66 F. Supp. 3d 263, 268 (D. Mass. 2014), quoting HipSaver, Inc. v. Kiel, 464 Mass. 517, 527 (2013). The litigation privilege supplies an affirmative defense. See, e.g., Frazier, 957 F.2d at 932 (difference in theory of liability was "distinction without a difference").

---

[11] Report and recommendation adopted 2010 U.S. Dist. LEXIS 146224 (April 1, 2010) (Saris, J.).

[12] Unprivileged publication expressly is made an element of the analogous tort for defamation, which requires "publication . . . without a privilege. . . ."[12] See Correllas v. Viveiros, 410 Mass. 314, 319 (1991).

The key question with respect to the defense is whether the counterclaim reveals that the defense applies and fails to "sketch" the "factual predicate" for an exception.  See Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (dismissal concerning statute of limitations).

The facts alleged in the counterclaim reveal that it is based on statements in GEICO's complaint, and defendants fail to sketch any alternative basis.  Specifically, defendants allege in derivative manner that GEICO committed a tort by stating that defendants "committed fraud in the submission of claims."  (See Dkt. Nos. 45, 46 at ¶ 34; Dkt. No. 47 at ¶ 26).  The context is revealed by the general counterclaim allegations, in particular paragraphs eleven and fourteen. (See Dkt. Nos. 45, 46, 47 at ¶¶ 11, 14).  Those paragraphs supply the sole factual allegation connected to alleged "disparagement, *i.e.*, that "GEICO has filed the instant Complaint."[13]  (Id.) The Court may take notice that, indeed, GEICO's complaint alleges fraud by defendants in the submission of insurance claims.  (Dkt. No. 1 at ¶ 2 (alleging defendants "execute a scheme to defraud" including through "submission of inflated demands for insurance payments founded on false and deceptive bills and records . . . .")).  The counterclaims fail to plausibly suggest that GEICO disparaged defendants anywhere outside of the complaint in this civil action.

By offering up GEICO's complaint as a source of liability and failing to plausibly suggest any other factual basis for the disparagement claims, defendants plead themselves out of Court. The statements in GEICO's complaint are absolutely privileged, and defendants cannot maintain a counterclaim based on those statements.  E.g., Tomaselli, supra at 2010 U.S. Dist. LEXIS 42612, *30.  Defendants fail to plausibly suggest that GEICO made any unprivileged comments

---

[13] Defendants view this as significant because of an unexplained and unsupported spite motive that they attribute to GEICO.  (See Dkt. Nos. 45, 46, 47 at ¶¶ 11, 14).  However, as noted, the litigation privilege bars claims irrespective of allegations of state of mind.  Pegasystems, supra at *5-*6, quoting Doe, 41 Mass. App. Ct. at 140, and Giuffrida, 73 Mass. App. Ct. at 242.

concerning defendants' fraudulent conduct. The two paragraphs above are the complete factual basis asserted in the counterclaims. Defendants fail to state a claim on which relief may be granted, and so the "disparagement" counterclaim asserted by each defendant (Five by Big City and Dr. Elias, Four by Dr. Bratton) should be dismissed.

### D. DEFENDANTS FAIL TO STATE CLAIMS FOR UNFAIR BUSINESS PRACTICES AND TORTIOUS INTERFERENCE.

Defendants also fail to state claims for unfair business practices and tortious interference. Bare denials of insurance claims—defendants say incorrectly—alone do not suffice. Allegations concerning contract disputes do not satisfy the "improper means" element of the interference tort, and formulaic assertions do not satisfy the "improper motive" element. The counterclaims are so impermissibly vague as to be devoid of essential information concerning even what third parties, communications, and insurance claims are in issue. Counterclaims Two and Three by Big City and Dr. Elias, and Counterclaims One and Two by Dr. Bratton, should be dismissed for failure to state a claim on which relief may be granted.

#### 1. Defendants Fail to Plausibly Suggest that GEICO Acted Unfairly in Denying Insurance Claims.

Defendants fail to state counterclaims on which relief could be granted for violation of Massachusetts General Laws chapter 93A. Generally, a "dispute over billing or a simple breach of contract does not create liability under chapter 93A." PhoneDOCTORx, LLC v. Healthbridge Mgmt., 58 F. Supp. 3d 152, 164 (2014), quoting Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55-56 (1st Cir. 1998) (internal quotations omitted). Instead, a plaintiff must plausibly suggest conduct that "'attain[ed] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce.'" Cook & Co. v. Matrix Risk Mgmt. Servs., LLC, U.S. Dist. Ct., D. Mass. No. 09-cv-10976-NG, 2011 U.S. Dist. LEXIS 6536, *33-34 (Jan. 24, 2011), quoting Saint-Gobain Indus. Ceramics, Inc. v. Wellons, Inc., 246 F.3d 64, 73 (1st Cir.

2001)).**14**  An insurer does not incur liability under those theories by investigating and acting to deny payment, regardless of the claim's actual or alleged validity.  See Guity v. Commerce Ins. Co., 36 Mass. App. Ct. 339, 343 (1994) (no violation of chapter 93A because factors reasonably raised insurer's suspicion as to validity of claim).  "A plausible, reasoned legal position that may ultimately turn out to be . . . unsuccessful – is outside the scope of the punitive aspects of . . . c. 93A. . . ."  Id.  Chapter 93A does not penalize a lack of "omniscience or perfection."  Bolden v. O'Connor Cafe of Worcester, Inc., 50 Mass. App. Ct. 56, 67 (2000), quoting Peckham v. Continental Cas. Ins. Co., 895 F.2d 830, 835 (1st Cir. 1990).

Here, defendants appear to focus their attention on a few conclusory allegations that the insurance claims were for necessary services and that defendants did not "overbill."  (Dkt. Nos. 45, 46, and 47 at ¶ 13).  The formulaic allegations still do not plausibly suggest that GEICO's investigation was *insufficient*, or that GEICO's legal positions are *unreasonable*, even though those are the facts that would be material to a claim of violation of chapter 93A.  See Guity, 36 Mass. App. Ct. at 343.  "[F]actual allegations that are 'merely consistent with' liability do not suffice."  Spinal Imaging Inc., supra, quoting Twombly, 550 U.S. at 557.  Defendants fail to state a claim for violation of chapter 93A.

### 2. Defendants Fail to Plausibly Suggest Interference by Improper Motive or Means.

The elements of a claim for tortious interference are not satisfied by allegations concerning injurious exercise of contract rights with third parties, default of contract duties, or by a formulaic recitation of the malice element of the tort.  Defendants fail to do more, and so they fail to state a claim on which relief may be granted for tortious interference.

---

**14** Compare Massachusetts Employers Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995) (de-emphasizing the "rascality" rubric and focusing on "the nature of challenged conduct and . . . the purpose and effect of that conduct").

A claim for tortious interference requires that the claimant plead factual allegations having enough factual heft to plausibly suggest an interference with contractual relations by improper means or for an improper motive. Skyhook Wireless, Inc. v. Google Inc., 86 Mass. App. Ct. 611, 619 (2014). The elements are not satisfied by a "formulaic recitation of the elements of a cause of action. . . ." Twombly, 550 U.S. at 555.

With respect to the *means* element, "[t]he assertion by a party of its legal rights" does not suffice. Skyhook Wireless, 86 Mass. App. Ct. at 622, quoting Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 62 Mass. App. Ct. 34, 39 (2004).[15] Nor is the element satisfied by an allegation of *breach*, because such a gloss on the law would unwisely render the tort "boundless," and effectuate a sea change in pleading of commercial contract disputes that then only "rarely would . . . fail to be a tort . . . ." Insurative Premium Fin. (Jersey) Ltd. v. Deutsche Bank Sec., Inc., U.S. Dist. Ct., Mass. C.A. No. 12-10642-NMG, 2012 U.S. Dist. LEXIS 187058, *30 (Dec. 18, 2012) (Sorokin, C.M.J.),[16] quoting K & K Management, Inc. v. Lee, 316 Md. 137, 169-70 (1989). Mere exercise of contractual rights, or alleged breach of reciprocal duties, will not satisfy the "improper means" element.

Likewise, with respect to the "improper motive" element, an allegation that a respondent intended "to shut [a party] out of the . . . market," has been held as a matter of law to be *insufficient*. Skyhook Wireless, 86 Mass. App. Ct. at 621. In the Skyhook matter, the Massachusetts Appeals Court affirmed rejection of an interference claim that was based on an exercise of contractual rights motivated to protect the respondent's business interests at the expense of still another business. See id. The court reasoned that there was nothing inherently

---

[15] Also citing Restatement (Second) of Torts § 773 (1979).

[16] Report and recommendation of chief magistrate judge accepted and adopted, Insurative Premium Fin. Jersey Ltd. v. Deutsche Bank Secs., Inc., U.S. Dist. Ct., Mass. C.A. No. 12-10642-NMG, 2013 U.S. Dist. LEXIS 40616, *1 (Mar. 21, 2013).

improper about being motivated to intentionally act in furtherance of one's legitimate interests regardless of disadvantage to the party asserting the tort.  See id.

Here, defendants fail to plausibly suggest that GEICO used any improper means, or acted with an improper motivation.  GEICO's contractual requests for cooperation and nonpayment of allegedly meritorious invoices, are insufficient to plausibly suggest a tortious "means" of "interference."  See Skyhook Wireless, 86 Mass App. Ct. 619, 622.  Likewise, the formulaic allegation that GEICO intended "to interrupt, interfere [with] and terminate the ongoing business of Big City," is insufficient to satisfy the "improper motive" element.  (Id. at ¶¶ 11, 14).  The conclusory allegation impermissibly leaves the Court to speculate concerning any *improper* reason why GEICO would believe "interference" would be beneficial to its interests.  On the other hand, the Court may take notice of the extensive *appropriate* reasons already pleaded by GEICO for investigation, denial of insurance claims, and filing of this civil action, which the counterclaims ignore, *viz.*, that there is ample evidence Big City is a vehicle for fraud and abuse.  (See Dkt. No. 1 at ¶¶ 1-10).  GEICO has a legitimate interest in preventing and terminating fraud, which motivation is not improper.  Barbosa v. Metro. Prop. & Cas. Ins. Co., Suffolk Super. Ct. C.A. No. 98-2021-E, *9 (Nov. 16, 1998) ("ferret[ing] out potentially false or exaggerated claims" is proper purpose of insurance investigation).  Defendants fail to plausibly suggest any improper means, or fact-specific and improper reason why GEICO would want to "interfere" with them, and allegations merely "consistent with" liability fail to state a claim on which relief may be granted.

### 3.     Counterclaims Excessively Vague.

Somewhat apart from the merits, the counterclaims for interference and unfair business practices fail for practical reasons of vagueness.  Defendants fail to identify the patients who

allegedly were interfered with or the insurance claims that allegedly should have been paid.[17] Defendants are required to provide adequate notice of their purported cause of action, and to plead with particularity any part of the cause that is based on allegations of false, fraudulent, or deceitful statements.[18]  See Fed. R. Civ. P. 8, 9(b).  Defendants fail to plead the counterclaims with the necessary detail.  See Spinal Imaging Inc., 2013 U.S. Dist. LEXIS 58789, *5 (dismissing complaint that failed to identify disputed contracts or contracting parties).  Accordingly, defendants fail to state claims on which relief may be granted for tortious interference and unfair business practices.  Id.

## V.   CONCLUSION

For the reasons set forth above, GEICO respectfully requests that the counterclaims filed by Big City, Dr. Elias, and Dr. Bratton, in Dkt. Nos. 45, 46, and 47, be dismissed for failure to state a claim on which relief can be granted.

---

[17] Defendants refused to admit GEICO's allegation as to the amounts of denied claims. (See Dkt. No. 1 at ¶¶ 7, 41, 42, 536 and Exhibits 2A, 2B; Dkt. Nos. 45, 46, and 47 at ¶¶ 7, 41, 42, 536).

[18]  Any allegation of "misrepresentation or deceit" must be pleaded with particularity. Declude, Inc. v. Perry, 593 F. Supp. 2d 290, 297 (D. Mass. 2008), quoting Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc., 215 F.3d 182, 191 (1st Cir. 2000).  That is a "federally imposed rule."  Hayduk, 775 F.2d at 443.

Respectfully submitted,

GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO GENERAL INSURANCE COMPANY, and GEICO INDEMNITY COMPANY,

By its attorneys,

Dated: December 10, 2015

*/s/ Douglas R. Tillberg*
David O. Brink, BBO #547370
  *dbrink@smithbrink.com*
Douglas R. Tillberg, BBO#661573
  *dtillberg@smithbrink.com*
Matthew E. Bown, BBO#687184
  *mbown@smithbrink.com*
SMITH & BRINK, P.C.
350 Granite Street, Suite 2303
Braintree, MA 02184
Phone 617-770-2214
Fax 617-774-1714


**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on **December 10, 2015**.

*/s/ Douglas R. Tillberg*
Douglas R. Tillberg