```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS




                                    )
GOVERNMENT EMPLOYEES                )
INSURANCE COMPANY,                  )
                                    )
        Plaintiff,                  )
                                    ) Civil Action
v.                                  ) No. 15-CV-13504-MLW
                                    )
BIG CITY CHIROPRACTIC, ET AL.,      )
                                    )
        Defendants.                 )
                                    )



            BEFORE THE HONORABLE MARK L. WOLF
              UNITED STATES DISTRICT JUDGE


                    LOBBY CONFERENCE
                       11:12 a.m.

                    December 16, 2015


        John J. Moakley United States Courthouse
                    Courtroom No. 10
                    One Courthouse Way
                Boston, Massachusetts  02210




                Kelly Mortellite, RMR, CRR
                   Official Court Reporter
        John J. Moakley United States Courthouse
              One Courthouse Way, Room 5200
                Boston, Massachusetts  02210
                    mortellite@gmail.com
```

```
 1   APPEARANCES:

 2   On Behalf of Plaintiff:
     David O. Brink, Esq.
 3   Smith & Brink, P.C.
     350 Granite Street
 4   Suite 2303
     Braintree, MA 02184
 5   617-770-2214
     dbrink@smithbrink.com
 6
     Douglas R. Tillberg, Esq.
 7   Smith & Brink, P.C.
     350 Granite Street
 8   Suite 2303
     Braintree, MA 02184
 9   617-657-0130
     dtillberg@smithbrink.com
10
     On Behalf of Defendant Big City Chiropractic & Sports Injury
11   and Brian Elias, DC:
     Edward J. McCormick, III, Esq.
12   McCormick & Maitland
     195 Main Street
13   Suite Six - Hayward Manor
     Franklin, MA 02038
14   508-520-0333
     ejmccormick3@verizon.net
15
     On Behalf of Defendant Karen Davis:
16   James McCall, Esq., Attending For:
     Rudolph F. Miller, Esq.
17   Law Office of Rudolph Miller
     75 Adams Street
18   Suite C
     Milton, MA 02186
19   617-282-5600
     rfmillerlaw@msn.com
20
     On Behalf of Defendant Megan Bratton, DC
21   Susan Frigoletto, Esq.
     Frigoletto Law Offices
22   19 Meadowbrook Road
     Wellesley, MA 02481
23   617-875-5904
     sfrigoletto@gmail.com
24

25
```

```
 1                    P R O C E E D I N G S
 2          THE COURT:  Why don't we start with the plaintiff, and
 3  why don't you let me know who you are and who you represent.
 4          MR. BRINK:  Good morning, Judge.  David Brink from the
 5  law firm of Smith & Brink, representing the plaintiff in this
 6  matter, Geico.
 7          MR. TILLBERG:  Doug Tillberg from --
 8          THE COURT:  Sorry.  Could you say that a little
 9  louder.
10          MR. TILLBERG:  Sure.  Doug Tillberg, also representing
11  Geico.
12          MR. McCORMICK:  Good morning, your Honor.  Edward
13  McCormick, representing Big City Chiropractic and Dr. Brian
14  Elias.
15          MS. FRIGOLETTO:  Good morning.  Susan Frigoletto,
16  representing Dr. Martin.
17          MR. MCCALL:  Good morning, your Honor.  James McCall,
18  with the Court's permission, standing in for Attorney Rudolph
19  Miller, who is actively on trial as we speak, for Karen Davis.
20          THE COURT:  Okay.  So all of the defendants are
21  represented here.  I wanted to get you in to establish a
22  schedule for this case.  I'm generally familiar with it from
23  the matters I've addressed so far, but I think it would be
24  helpful if you tell me, you know, what is the essence of the
25  case or what I should know from the defendant's perspective to
```

```
 1   have a fuller flavor that maybe more than comes through the
 2   from the papers.
 3           MR. BRINK:  You said the defendant's perspective?
 4           THE COURT:  First from Geico and then from the
 5   defendant's perspective as well.
 6           MR. BRINK:  This is an insurance fraud case involving
 7   a chiropractor that Geico alleges is providing excessive,
 8   unnecessary and in many instances fraudulent medical bills and
 9   medical records.  The details are set forth in our complaint.
10           THE COURT:  Why don't you remind me of those.
11           MR. BRINK:  Okay.  Dr. Elias is a chiropractor.  He
12   operates facilities around the United States and in Florida,
13   Kentucky and Pennsylvania.  Several years ago he opened up a
14   facility called Big City in Boston and is in the process of
15   opening a second facility now called Beantown Chiropractic.
16           Geico has received numerous claims, I would say
17   probably all in all about $600,000 in claims in several years.
18   Many of those claims were investigated by the company's SIU, or
19   Special Investigation Unit.  Those investigations sometimes led
20   to the insurance company exercising their right under the
21   contract to conduct what is known as an examination under oath,
22   very much like a deposition, but it's pursuant to the contract.
23   After those investigations --
24           THE COURT:  Who is examined under oath?
25           MR. BRINK:  The patient.
```

1           THE COURT:  The patient.
2           MR. BRINK:  And although during the course of the
3  investigation, Dr. Bratton, who is represented by my sister,
4  gave a statement as well as part of the investigation.  These
5  individual investigations led to the denial of many claims.
6  Maybe the best way to give you enough feel for the case is to
7  give you an example.
8           In one instance, the patient indicated he was also an
9  employee of the clinic and that he was hired to be a driver to
11:15 10 bring people back and forth to appointments.  Shortly after
11 being hired as a driver, they had him giving treatment to
12 patients.
13          THE COURT:  What kind of treatment?
14          MR. BRINK:  Palliative modalities in the form of
15 electric stimulation, hot packs and supervising exercise, all
16 of which is in violation of Massachusetts regulations.
17          THE COURT:  Which require that somebody be a licensed
18 professional?
19          MR. BRINK:  Yes.  That's just one example of the
11:16 20 things that were going on.  We also brought suit against my
21 brother's client, Karen Davis.  Ms. Davis is a layperson who
22 holds herself out to the community as a lay paralegal, and she,
23 we allege, is receiving money for referring people to the Big
24 City facilities.  There is again a regulation in Massachusetts
25 that prohibits a chiropractor from soliciting patients by

```
 1   giving things of value.
 2           And so we believe that this solicitation is a
 3   violation of that Massachusetts regulation.  That regulation is
 4   among the regulations that are for the health and welfare of
 5   the people of Massachusetts, and therefore a violation of that
 6   regulation is an automatic violation of 93A.  And we have cited
 7   case law that if a chiropractic facility is paying for patients
 8   that that makes their entire bill in violation of the
 9   regulations, they violate 93A, and makes the entire bill --
10           THE COURT:  What establishes that it's an automatic
11   violation of Chapter 93A?
12           MR. BRINK:  There is a chiropractic regulation, which
13   is cited in our materials, 4408 -- I could get the citation for
14   your Honor.  You cannot give things of value to get patients
15   in.
16           THE COURT:  And what makes that an automatic violation
17   of Chapter 93A?
18           MR. BRINK:  There is another regulation that says if
19   you violate the regulations for the health and welfare of the
20   people in Massachusetts, that is an automatic violation of 93A.
21   And there is case law decisions at the trial court level issued
22   by Judge Cratsley and so forth, saying that once a facility
23   establishes they're paying for their patients -- summary
24   judgment for the violation.
25           THE COURT:  And part of the reason I ask that is I
```

1  think you've got about a dozen counts, including RICO
2  allegations.  But there may be, after discovery, a focused and
3  efficient way to deal with this.  If you're going to win --
4  seem to think you're going to win the Chapter 93A claim, you
5  might have to try a RICO case.
6           MR. BRINK:  In other cases I filed, we made some
7  recent decisions of is it even necessary to do both.  We have
8  tried cases, I tried one in front of Judge Young which went up
9  to the First Circuit where the Court recognized that this
11:19 10 conduct represents mail fraud, while at the same time unfair
11 and deceptive business practice --
12           THE COURT:  What case is that?
13           MR. BRINK:  *Aetna v. Rodco* is a case I tried before
14 Judge Young.  I believe, your Honor, if my memory serves, 43
15 F.3d 1543, 1995.
16           THE COURT:  19 --
17           MR. BRINK:  1994.
18           THE COURT:  You've been at this for a while.
19           MR. BRINK:  I have.
11:19 20          THE COURT:  All right.  And we'll get into the
21 procedural posture of this, but what's the relief you're
22 seeking?
23           MR. BRINK:  As I said, there was about $600,000 of
24 claims submitted by Big City in Massachusetts.
25           THE COURT:  Did you pay them all?

1        MR. BRINK: Paid 110. Was it less than that? My
2   brother will correct me on the number. But they have been
3   maintaining their request. Actually some state court suits
4   were filed, but those have been stayed. I think they sued on
5   nine instances, your Honor.
6        THE COURT: Big City sued?
7        MR. BRINK: Big City sued Geico. And those have been
8   stayed. The amount paid by Geico is $46,775. Then we also
9   allege -- I think the 110 number comes from costs incurred. So
11:20 10 restitution, another 62,000. But we have the other pending --
11  you know, the demand for another 500,000. We also know that
12  Mr. Elias's other clinics have also submitted millions of
13  dollars.
14       THE COURT: In other parts of the country?
15       MR. BRINK: In other parts of the country. And that
16  is certainly part of our continuing focus.
17       THE COURT: And you're seeking declaratory relief, I
18  think? Are you seeking declaratory and injunctive relief?
19       MR. BRINK: Yes.
11:21 20      MR. TILLBERG: That's right.
21       THE COURT: Okay. And what should I know from the
22  defendant's perspective?
23       MR. McCORMICK: Defendants, your Honor, would deny any
24  of the allegations, as we have. The evidence would be that
25  there is always a qualified doctor, a licensed chiropractor

1  on-site, that all therapeutic procedures which are recommended
2  and given are done so after a diagnosis, after a prognosis and
3  a treatment plan that is reasonable and necessary.
4      We would say that we have done nothing wrong.  What
5  Big City has done wrong is submitted $600,000 worth of claims
6  to Geico and they don't want to pay.  And we would be
7  introducing evidence that not only is Geico not paying but the
8  other insurance companies are not paying.  But specifically
9  with Geico, we believe that it is a unilateral denial of every
11:22 10  claim during the years, at least 2015, and that this is an
11  attempt to put Big City, Dr. Elias, out of business and nothing
12  more and that they have done nothing wrong; there's no fraud
13  whatsoever.
14      THE COURT:  And what should I know from the other
15  defendants' perspectives?
16      MS. FRIGOLETTO:  Well --
17      MR. McCORMICK:  Dr. Bratton works for Big City.  And
18  Attorney Frigoletto is representing her individually, but it
19  would be the same defense.  And as far as Mr. McCall standing
11:22 20  in for Mr. Miller, if I might, with his client, Ms. Davis,
21  Ms. Davis, as my brother Mr. Brink said, is an individual.  She
22  is a civilian.  She is not a licensed medical provider, and she
23  does not provide any medical services.  What she does do is
24  marketing for Big City.  She is not paid on any individual
25  basis, on any contingency, on any -- if you bring in ten

|   |   |
|---|---|
| 1 | people, you get X.  Nothing like that.  She is paid a flat |
| 2 | marketing fee, no matter who comes in.  And we believe that is |
| 3 | not against the regulations. |
| 4 | THE COURT:  This is really helpful.  It brings into |
| 5 | sharper focus matters that are necessarily somewhat more |
| 6 | generically described in the pleadings. |
| 7 | So now we need to talk about a schedule for the case, |
| 8 | and there should have been, pursuant to the order, a settlement |
| 9 | demand to settle the case. |
| 11:24  10 | Actually, did Geico make a settlement demand? |
| 11 | MR. BRINK:  We did, your Honor, and I have the letters |
| 12 | right here. |
| 13 | THE COURT:  All right. |
| 14 | MR. BRINK:  We did it pursuant to the response. |
| 15 | THE COURT:  Have you received a response? |
| 16 | MR. BRINK:  I would say we've been having discussions, |
| 17 | and to let the Court know, I feel we've had excellent |
| 18 | communication and cooperation by counsel.  I would anticipate, |
| 19 | I think we're going to have a response next week? |
| 11:24  20 | MR. McCORMICK:  Yes, we've responded, your Honor. |
| 21 | There are several components to it, one of which would be |
| 22 | future endeavors, if I might term it that way. |
| 23 | THE COURT:  In fact, if you prefer, we can go off the |
| 24 | record about the settlement, or if a transcript is prepared, it |
| 25 | can be sealed.  But as I say, I'm trying to get a practical |

     1    feel for this motion to dismiss counterclaims and potential

     2    slap suits.  And before I give you an elaborate schedule and

     3    carve out time for you, I would like to know, have you been

     4    talking or are there prospects?

     5            MR. BRINK:  Sure.

     6            THE COURT:  We can go off the record for this.

     7            (Discussion off the record.)

     8            MR. BRINK:  Geico has filed a motion to dismiss the

     9    counterclaims.  That has been filed by agreement.  The

11:30 10    opposition will be due January 7, and I believe that motion

    11    will need attention from the Court if we don't resolve the

    12    case.

    13            There is another motion to dismiss that we filed with

    14    respect to Attorney Miller's motion on behalf of his client,

    15    Ms. Davis.  In my discussions with Attorney Miller -- and he's

    16    confirmed this in writing with me, but he hasn't filed anything

    17    with the Court -- he is prepared to withdraw his counterclaims

    18    with prejudice and thus making our motion to dismiss those

    19    counterclaims moot.  So before the Court spends any time on

11:31 20    that motion, I can report with confidence that that motion is

    21    moot.

    22            THE COURT:  And those counterclaims mirror the Big

    23    City?

    24            MR. BRINK:  No.  They were for defamation.  But

    25    Attorney Miller is prepared to withdraw those.

|   |   |
|---|---|
| 1 | THE COURT: Is that your understanding, Mr. McCall? |
| 2 | MR. McCALL: That's my understanding, your Honor. |
| 3 | THE COURT: How long would it take, just so we can |
| 4 | button up the loose ends, to file something withdrawing them? |
| 5 | Can it be done early next week or something? |
| 6 | MR. McCALL: Sure. |
| 7 | THE COURT: So Monday is the 21st. I'm ordering that |
| 8 | the notice -- you know, if the counterclaims of Ms. Davis are |
| 9 | going to be withdrawn, notice of that shall be provided by |
| 11:31 10 | December 21. Okay? |
| 11 | And then, Mr. McCormick, can you operate on parallel |
| 12 | tracks; file any opposition to the motion to dismiss by January |
| 13 | 7 and continue to discuss the possibility of settlement, too? |
| 14 | MR. McCORMICK: I can certainly do that, your Honor. |
| 15 | I don't know if maybe it makes more sense than having my client |
| 16 | spend money doing that, give a report-back date. |
| 17 | THE COURT: That's what I'm beginning to think. What |
| 18 | if I said that the parties are to report concerning settlement |
| 19 | on January 8. That's the first Friday. Does that give you |
| 11:33 20 | enough time? And you can tell me you settled the case, you've |
| 21 | agreed to go to mediation, or it's not worthwhile to continue |
| 22 | talking settlement now. Let's get back on the litigation |
| 23 | track. |
| 24 | If the case is not settled or going to mediation, the |
| 25 | response to the pending motions -- or motion it will be -- to |

```
 1   dismiss the counterclaims due January 15.  Okay?
 2             MR. McCORMICK:  That's fine, your Honor.  Thank you.
 3             MR. BRINK:  Fine, your Honor.  Thank you.
 4             THE COURT:  Do you anticipate you want to file a reply
 5   to that opposition?
 6             MR. BRINK:  Having not seen it, I'd like to have the
 7   option.
 8             THE COURT:  Any reply shall be filed by January 15,
 9   and I will plan to see you at 3:00 on January 21.  I'll hear
10   you on the motion to dismiss the counterclaims.  And I expect
11   to decide them that day and give you a schedule for the rest of
12   the case.
13             MR. McCORMICK:  Your Honor, if I might --
14             THE COURT:  Go ahead.
15             MR. McCORMICK:  I was just confused on the date.  My
16   opposition is due January 15.
17             THE COURT:  I'm sorry.  Maybe I just did this wrong.
18   Your opposition is due on the 15th.  So this is a problem.  The
19   reply will be due on the 22nd.  And then I'm away most of that
20   following week.  I'll see you at 11:00 on February 2 -- 10:30
21   on February 2 for argument on any motion to dismiss and
22   scheduling.
23             Now, what about the defendant's contemplated anti-slap
24   motion?  It's your understanding you've got 60 days to file it?
25             MR. BRINK:  Yes.
```

```
 1              THE COURT:  60 days would be up when?
 2              MR. TILLBERG:  Mid-January for the Big City
 3    counterclaims.
 4              THE COURT:  I had previously decided that features
 5    like that were procedural, not substantive.  The First Circuit
 6    has indicated otherwise.  So I will assume you've got the 60
 7    days.  When is the 60 days up?
 8              I mean, I think this should be on the same schedule I
 9    just established.  In other words, if you're not talking
10    settlement, that motion should be filed by the 15th with a
11    response.  This is a little different.  What should I do about
12    that?
13              MR. BRINK:  Your Honor, if we're moving to toward the
14    settlement, I see the anti-slap motion to be maybe a
15    distraction from the larger picture.  So I want to exercise all
16    of my client's rights, but I would certainly encourage them
17    that, if we are moving forward and we're getting flexibility,
18    to put that aside.
19              THE COURT:  Meaning not file it --
20              MR. BRINK:  Right.
21              THE COURT:  -- at all?
22              MR. BRINK:  If we are moving towards good-faith
23    negotiations.
24              THE COURT:  Otherwise, you have to file it --
25              MR. BRINK:  Pursuant to the rules.
```

```
 1                THE COURT:  -- pursuant to the statute.
 2                MR. BRINK:  Right.
 3                THE COURT:  Within the 60 days.
 4                MR. BRINK:  Right.  It seems to me if I needed to file
 5     it to preserve my client's rights, we could then give an
 6     extension to the opposition period so we're not spending time
 7     on it.
 8                THE COURT:  Precisely.  You can file it to preserve
 9     your options.  But if you do that, tell me at the same time,
10     you know, you've agreed to an extension so you can continue
11     your settlement discussions.
12                MR. BRINK:  That seems to me to make sense.
13                THE COURT:  Although it's generally my preference to
14     decide everything once when you're on my radar screen.
15                Let me tell you a couple of other things.  You talked
16     about a proposed protective order for confidential information.
17     I enter such orders, but they need to have the following
18     provisions:  one, if there's any filing that includes
19     confidential information, a redacted version has to be filed
20     for the public record simultaneously.  So not everything is
21     under seal because there's some confidential information.
22                Two, a confidentiality agreement governs only
23     pretrial, and the issues of confidentiality would have to be
24     revisited in connection with any trial.  Discovery materials,
25     for example, there's no right of public access to discovery
```

1    materials, *Anderson v. Cryovac*, but there is presumptive public
2    access to anything that goes on in court.
3         And the next feature is, and this is the law in the
4    First Circuit, if I sign a confidentiality order, I retain the
5    authority to modify it after giving the parties notice and an
6    opportunity to be heard.  In other words, if it's not working,
7    from my perspective or somebody else's, it can be modified.
8    Although I wouldn't do that without giving you notice and an
9    opportunity to be heard.
11:39 10         With regard to settlement, some settlements don't
11   involve the Court.  You reach an agreement.  Some settlements
12   do involve the Court because you're looking for some kind of
13   court order as part of them.  And this relates to the issue of
14   confidentiality.  Again, court orders -- there is generally a
15   public interest in what goes on in court.  I know there's been
16   at least one article about this case.  And even if you agreed
17   that a settlement that either requires approval of the court or
18   requires an order of the court should be confidential, I might
19   not.  So, you know, if confidentiality is important, to be
11:40 20  colloquial, you may want to leave me out of this.  But I just
21   don't want you to --
22         MR. BRINK:  Have an expectation.
23         THE COURT:  Right.  And I'm not saying I wouldn't do
24   it.  I'll listen to it.  But, you know, generally speaking, in
25   some cases there's a general public interest in the settlement

```
      1    not being confidential if the Court is somehow involved with
      2    it.
      3             MR. BRINK:  That's helpful, your Honor.  Just to give
      4    the Court a little further insight, the nature of the
      5    confidential information that we have is the personal
      6    information that you will find in medical records, Social
      7    Security numbers and that.  But I realize you're talking beyond
      8    that in terms of the settlement itself.
      9             THE COURT:  Exactly.  If -- no.  Exactly.
11:41 10             MR. BRINK:  That is helpful.
     11             THE COURT:  All right.  Well, I was prepared to
     12    schedule the other events, but I didn't know you'd be so open
     13    to having serious settlement discussions.  At this point, I
     14    think this is a very reasonable way to proceed.  You'll have an
     15    opportunity to see if you can resolve it or go to mediation
     16    with a view toward resolving it.  And if not, you're still on
     17    my radar screen, and I'll see you again next month.
     18             MR. BRINK:  Thank you very much.
     19             MR. McCORMICK:  Thank you, your Honor.
11:42 20             THE COURT:  Anything more you think we should discuss
     21    today?
     22             MR. BRINK:  I don't think so.
     23             THE COURT:  All right.  Thank you.
     24             (Adjourned, 11:42 a.m.)
     25
```

```
 1
 2                CERTIFICATE OF OFFICIAL REPORTER
 3
 4        I, Kelly Mortellite, Registered Merit Reporter
 5   and Certified Realtime Reporter, in and for the United States
 6   District Court for the District of Massachusetts, do hereby
 7   certify that pursuant to Section 753, Title 28, United States
 8   Code that the foregoing is a true and correct transcript of the
 9   stenographically reported proceedings held in the
10   above-entitled matter and that the transcript page format is in
11   conformance with the regulations of the Judicial Conference of
12   the United States.
13                     Dated this 4th day of January, 2016.
14
15                     /s/ Kelly Mortellite
16                     _____
17                     Kelly Mortellite, RMR, CRR
18                     Official Court Reporter
19
20
21
22
23
24
25
```